STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss                           CRIMINAL ACTION
                                        DOCKET NO. CR-07-49
                                        KNC - PEN - 1/14/2008

JIMMY LIPHAM,                  )
                               )
     Petitioner                )
                               )
        v.                     )        Order on Post-Conviction
                               )        Review
STATE OF MAINE,                )        ┌─────────────────────────┐
                               )        │ FILED & ENTERED         │
     Respondent                )        │ SUPERIOR COURT          │
                                        │ JAN 14 2008             │
                                        │ PENOBSCOT COUNTY        │
                    DECISION            └─────────────────────────┘

    Under a Post Conviction Assignment Order dated

February 1, 2007, responding to a Petition for Post

Conviction Review, this matter was set for hearing in

Ellsworth, Maine on January 7, 2008.  Appointed counsel,

Jeffrey Toothaker, Esq., represented petitioner.  Assistant

Attorney General Donald W. Macomber, Esq., represented the

State.  Mr. Lipham was present and testified, as did Mrs.

Kerry Lipham (Petitioner's wife) and attorney Bradford S.

Macdonald, Esq. (Petitioner's attorney at trial).

    As the Post-Conviction Assignment Order makes clear,

the single ground to be considered on this Petition for

Post-Conviction Review is the ineffective assistance of

counsel.  The Law Court has recently confirmed the standard

to be applied in determining whether a defendant has

                                                            1

received constitutionally ineffective assistance of counsel in the case of *Francis v. State*, 2007 ME 148. In that case, the Law Court advised:

> "To determine whether a petitioner received constitutionally ineffective assistance of counsel, this Court conducts a two-prong inquiry." See *Alexandre v. State*, 2007 ME 106, ¶ 43, 927 A.2d 1155, 1167. First, we examine "whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney. . . ." *McGowan v. State*, 2006 ME 16, ¶ 11, 894 A.2d 493, 496-97 (quotation marks omitted). Second, we determine whether the attorney's performance "likely deprived the defendant of an otherwise available substantial ground of defense" or "likely affected the outcome of the [proceeding]." *Id.* ¶¶ 11-13, 894 A.2d at 497 (noting that "the federal and state guarantees are virtually identical"); see also *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). In applying the test, we may "begin with the second prong regarding prejudice because if it is determined that there was no prejudice, there is no need to address the first prong regarding whether counsel's performance was deficient." *McGowan*, 2006 ME 16, ¶ 13, 894 A.2d at 497.

## Discussion

### 1. Background

In his Petition, allegations are made with respect to actions in the form of omissions or failure in judgment on the part of defense counsel. See Petition for Post-Conviction Review, § 27A. The salient facts, most of which were reaffirmed by the witnesses at the Post-

Conviction Hearing, are as follows and are found in the Law Court decision on the criminal appeal of *State v. Lipham*, 2006 ME 137, 910 A.2d 388, 390-391.

On July 31, 2003, Jimmy Lipham and the decedent, David Langway, acquaintances since 1984, drove to Lipham's home in Glenburn. Upon arrival, Langway walked to a field behind the house to pick blueberries, while Lipham went inside to retrieve his Glock .45 caliber handgun. Lipham testified that the men intended to poach a deer, and that he hid the handgun from his wife because she would not approve. The two men then entered the woods behind the house.

While in the woods, Lipham shot Langway in the back of the head, killing him. Lipham testified that he tripped and fell, causing the handgun to accidentally discharge. After the shooting, Lipham discarded Langway's wallet, shirt, and lunchbox in a Bangor dumpster. In the days following the shooting, Lipham dismembered and buried the body in the woods behind his house. He sought to conceal Langway's death by using Langway's food stamp card to purchase groceries, and having Langway's mail forwarded to a private mailbox opened by Lipham using the alias Jimmy Green.

In September 2003, the police investigating Langway's disappearance stopped at Lipham's home when Lipham was visiting his family in Alabama. After speaking with

3

Lipham's wife, the police conducted a search of the woods behind his house, where they found a skull fragment and a buried torso that DNA tests later confirmed were the remains of Langway.

At the request of police, Lipham's wife placed a secretly recorded phone call to him in Alabama. During the call, Lipham's wife confronted him about the death of Langway, making several statements indicating that she believed Lipham had killed him intentionally.[1] Lipham did not respond to her allegations, other than to direct her to file for a legal separation and a restraining order, and to tell the police nothing. Soon thereafter, Lipham was arrested in Alabama for the murder of Langway. When members of the Maine State Police arrived to supervise his extradition to Maine, Lipham made a voluntary statement confessing to the shooting, but claiming it was an accident.

Prior to trial, Lipham filed two motions in limine seeking to exclude evidence of the recorded phone call as inadmissible under the husband-wife privilege, and unfairly prejudicial pursuant to M.R. Evid. 403. The Superior Court

---

[1] Mrs. Lipham's more damning statements include: "I'm not stupid. I know what you did . . . "; "He was harmless. Why? Why did you do that? Why couldn't you just have said 'Go to hell Dave, I quit,' and just gone home"; and "I'll never understand how you could have stood there and done that, I, I'll just never understand it."

4

denied both motions, but instructed the jury on several occasions that Mrs. Lipham's statements during the call were not admissible for any reason other than context. Following his conviction, the court denied Lipham's motions for a new trial pursuant to M.R. Crim. P. 33 and for acquittal pursuant to M.R. Crim. P. 29(b), and sentenced Lipham to forty years in prison. This appeal followed."

## 2. Post-Conviction Review Challenges

Mr. Lipham raises several specific challenges he feels demonstrate the ineffective assistance of his trial counsel. They include (1) that counsel did not challenge his wife's mental condition (at hearing, this was expanded to not having impeached her credibility at trial when she testified). Likewise (2) Petitioner challenged his counsel's failure to impeach the credibility of the State's other prime witness, Chad Tracy as well as (3) Counsel's failure to ask for curative instructions regarding the admission of the substance of the phone call between the Petitioner and his wife and failure to ask for a mistrial on the same grounds.

### A. Failure to Challenge Kerry Lipham's Mental Condition

A review by the Court of the trial transcript of Mrs. Lipham's testimony clearly revealed efforts to impeach Mrs.

5

Lipham as to both her visual acuity and her history of memory loss. Trial Transcript ("Trans") Vol. 2 at 107-111. Mrs. Lipham testified before this Court on behalf of Mr. Lipham. While the substance of her testimony did not add to the facts, which had been presented from a variety of sources, that testimony did confirm Mrs. Lipham's acknowledgment that she had significant memory problems as of January of 2008. It was impossible for the Court to conclude how significant those problems were in June of 2005 when this case was tried. Mr. Lipham's testimony suggested that Mrs. Lipham sought medical assistance for her memory problems in the summer of 2005 when this case was being tried. No records were provided to help the Court determine what medical professionals were saying either about the status of her memory in June of 2005 or as of now.

The transcript of Mrs. Lipham's testimony suggests on its face that Mrs. Lipham was able to respond to questions about the facts surrounding this shooting with a higher degree of comfort in June of 2005 then she was able to muster in January of 2008. Whether that change is due to the passage of time or the deterioration of her mental condition, there is no way for the Court to tell. Without supporting medical provider records, there is no way to

determine what might have been available to counsel to attack or impeach her visual acuity or her mental capacity.

The questioning of Mr. Lipham and attorney Macdonald in January of 2008, revealed that Mr. Macdonald used all the information he had available at the time to impeach Mrs. Lipham and that he was only made aware of Mrs. Lipham's alleged memory loss at the last moment before trial began. He held nothing back. Moreover, as Mr. Macdonald explained, the impeachment and degree of impeachment of Mrs. Lipham was a dangerous path for the defendant to follow. That is, there were only two direct witnesses to this fatality, Mr. Lipham and the decedent. Mrs. Lipham was on a picnic bench in her back yard at the time these events unfolded and as such was the next best witness on how they unfolded. She was, however, several hundred yards from the woods into which Mr. Lipham and the decedent walked. Clearly, there was testimony from Mrs. Lipham that was very damaging to Mr. Lipham. However, she had things to say that the defendant needed the jury to accept. They included that Mr. Lipham came out of the woods in a panic after she heard the shot — bolstering his position that the shooting was not intentional but was accidental. Trans. Vol. 2 at 73, 74.

Impeachment questions were asked, perhaps less aggressively than might have been done, but they were asked with a clear view to the strategy of demonstrating the lack of intent. It must be recalled that when he was arrested, Mr. Lipham admitted that he had shot the decedent but that it was an accident. See *Lipham*, 910 A.2d at 391. It also must be noted that in January of 2008, Mrs. Lipham was encouraging the Court to accept that she was having memory problems in June of 2005, although she could not be sure and vacillated on this point. However, a review of the trial transcript in June of 2005, demonstrates she clearly was not willing to acknowledge either that she had memory problems or visual acuity problems. Trans. Vol. 2 at 107-111.

Upon a review of the trial transcript, the Law Court decision of *State v. Lipham*, and the testimony of the witnesses who testified on January 7, 2008, the Court is not persuaded that Mr. Macdonald's representation of Jimmy Lipham in preparation for and participation in the trial in June of 2005, constitutes a violation of Mr. Lipham's constitutional right to be represented by counsel who provides effective assistance in the legal representation of the defendant. As phrased in *Francis*, the Court is not persuaded that attorney Macdonald's performance "likely

deprived the defendant of an otherwise available substantial ground of defense" or "likely affected the outcome of the [proceeding]." The Court denies the Petition on the grounds raised in item #1.

### B. Failure to Impeach Chad Tracy

Mr. Tracy's testimony was brief, but significant. Trans. Vol. 2 at 172, 127. The essence of it was that Mr. Lipham has said in a joking manner that he liked Maine because if someone did you a wrong, you could off them and bury them in a back yard.

On cross examination, Mr. Macdonald sought to discredit Mr. Tracy due to outstanding charges and motivation to improve his position with law enforcement by coming forward after the murder had been discovered and reporting this conversation. Trans. Vol. 2 at 181-188.

At the January 7th hearing, Mr. Macdonald shared with the Court and parties, the efforts his office made in order to find any matter on which Mr. Tracy's credibility could be impeached. Other than the tangential issue that he ultimately pressed at trial, he was able to find nothing. Likewise, when he testified, Mr. Lipham acknowledged that he was aware of no other impeachment information, but felt that Mr. Macdonald should have found some. The Court concludes that Mr. Macdonald's efforts were reflective of

9

creative and good lawyering as opposed to representing in effective assistance of counsel as defined by the Law Court in *Francis*. The Court denies the Petition on the grounds raised in item #2.

### C. Failure to Ask for Curative Instruction on Admission of Phone Call

Passing by the fact that there were several Motions in Limine filed by Defense counsel seeking to limit or exclude the admission of the phone call between Mr. and Mrs. Lipham (*Lipham*, 910 A.2d at 391) a review of the trial transcript confirms multiple times that Mr. Macdonald sought to object to or limit the introduction and use of the tape recorded conversation between Mr. and Mrs. Lipham. The Court agreed at Trans. Vol. 2 at 86-87 to give a limiting instruction in terms of using that transcript. Again, the Court gave a cautionary instruction on the admissibility of Mr. Lipham's statements or lack of statements but not Mrs. Lipham's. Trans. Vol. 2 at 92. At Trans. Vol. 2 at 96, attorney Macdonald again objected to the admission and use of the phone call tape/transcript. Finally at Trans. Vol. 2 at 98, Mr. Macdonald again asked the Court to repeat it cautionary instruction and that was done.

Reviewing the Trial Transcript, the decision of the Law Court in *State v. Lipham* and the testimony of the

witnesses at the Post-Conviction Review hearing on January 7, 2008, as well as the arguments of counsel given at that time, the Court is persuaded that the efforts of Mr. Macdonald, on behalf of Mr. Lipham with respect to the admission of the phone call Mr. Lipham had with Mrs. Lipham during the trial, do not represent the ineffective assistance of counsel as that term is defined in *Francis* and the cases cited therein. The Court denies the Petition on the grounds raised in item #3.

The Court would restate as it did at the January 7, 2008, hearing that the arguments of prosecutorial misconduct and erroneous admission by the trial court of the exhibit reflecting the phone call between Mr. and Mrs. Lipham is not part of this proceeding. These issues were dealt with in the direct appeal to the Law Court. *Lipham*, 910 A.2d at 390 n.1.


The entry shall be: PETITION DENIED

Dated: January 14, 2005

Kevin M. Cuddy, Justice

11

ATTORNEY FOR THE STATE

Fernand LaRochelle Asst AG
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA   ME   04333


ATTORNEY FOR THE PETITIONER

Jeffrey Toothaker Esq
P OBOX 1084
ELLSWORTH   ME   605