2006 ME 137

**STATE of Maine**

, v.

**Jimmy D. LIPHAM.**

Supreme Judicial Court of Maine.

Argued: Oct. 12, 2006.
Decided: Nov. 28, 2006.

---

6. The record does not reflect whether Wortman was sanctioned by the Authority for his participation in the agreement.

G. Steven Rowe, Atty. Gen., Donald W. Macomber, Asst. Atty. Gen. (orally), Fer-

nand LaRochelle, Asst. Atty. Gen., Augusta, for State.

Bradford S. Macdonald (orally), Macdonald & Dalton, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

DANA, J.

[¶ 1] Jimmy D. Lipham appeals from a judgment of conviction for intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2005), following a jury trial in the Superior Court (Penobscot County, *Mead, J.*), contending that the court erred (1) in admitting into evidence a tape of a secretly recorded marital communication, and (2) in admitting the same tape over Lipham's claim of unfair prejudice pursuant to M.R. Evid. 403. We affirm the judgment.[1]

## I. BACKGROUND

[¶ 2] On July 31, 2003, Jimmy Lipham and the decedent, David Langway, acquaintances since 1984, drove to Lipham's home in Glenburn. Upon arrival, Langway walked to a field behind the house to pick blueberries, while Lipham went inside to retrieve his Glock .45 caliber handgun. Lipham testified that the men intended to poach a deer, and that he hid the handgun from his wife because she would not approve. The two men then entered the woods behind the house.

[¶ 3] While in the woods, Lipham shot Langway in the back of the head, killing him. Lipham testified that he tripped and fell, causing the handgun to accidentally discharge. After the shooting, Lipham discarded Langway's wallet, shirt, and lunchbox in a Bangor dumpster. In the days following the shooting, Lipham dismembered and buried the body in the woods behind his house. He sought to conceal Langway's death by using Langway's food stamp card to purchase groceries, and having Langway's mail forwarded to a private mailbox opened by Lipham using the alias Jimmy Green.

[¶ 4] In September 2003, the police investigating Langway's disappearance stopped at Lipham's home when Lipham was visiting his family in Alabama. After speaking with Lipham's wife, the police conducted a search of the woods behind his house, where they found a skull fragment and a buried torso that DNA tests later confirmed were the remains of Langway.

[¶ 5] At the request of police, Lipham's wife placed a secretly recorded phone call to him in Alabama. During the call, Lipham's wife confronted him about the death of Langway, making several statements indicating that she believed Lipham had killed him intentionally.[2] Lipham did not

---

1. Lipham also argues that (1) the remarks of the State during closing arguments amounted to prosecutorial misconduct; (2) the court erred by not granting Lipham's motion for a new trial; and (3) the evidence was insufficient to support the conviction. Because we affirm the Superior Court's decision to admit the evidence of the recorded phone call over Lipham's objections of spousal privilege and unfair prejudice, we find his claims of prosecutorial misconduct and the need for a new trial to be unpersuasive.

Furthermore, the evidence in this case, when viewed in a light most favorable to the State, is sufficient for a jury to rationally find Lipham guilty of each element of intentional or knowing murder beyond a reasonable doubt. *See State v. Kotredes*, 2003 ME 142, ¶ 9, 838 A.2d 331, 335.

2. Mrs. Lipham's more damning statements include: "I'm not stupid. I know what you did ...";  "He was harmless. Why? Why did you do that? Why couldn't you just have said 'Go to hell Dave, I quit,' and just gone home"; and "I'll never understand how you could have stood there and done that, I, I'll just never understand it."

respond to her allegations, other than to direct her to file for a legal separation and a restraining order, and to tell the police nothing. Soon thereafter, Lipham was arrested in Alabama for the murder of Langway. When members of the Maine State Police arrived to supervise his extradition to Maine, Lipham made a voluntary statement confessing to the shooting, but claiming it was an accident.

[¶ 6] Prior to trial, Lipham filed two motions *in limine* seeking to exclude evidence of the recorded phone call as inadmissible under the husband-wife privilege, and unfairly prejudicial pursuant to M.R. Evid. 403. The Superior Court denied both motions, but instructed the jury on several occasions that Mrs. Lipham's statements during the call were not admissible for any reason other than context. Following his conviction, the court denied Lipham's motions for a new trial pursuant to M.R.Crim. P. 33 and for acquittal pursuant to M.R.Crim. P. 29(b), and sentenced Lipham to forty years in prison. This appeal followed.

## II.  DISCUSSION

### A.  The Husband–Wife Privilege

■■■ [¶ 7] Maine law provides that "[t]he husband or wife of the accused is a competent witness except in regard to marital communications." 15 M.R.S.

§ 1315 (2005).  Rule 504, the husband-wife privilege, provides in pertinent part:

(a) **Definition.** A communication is confidential if it is made privately by any person to his or her spouse and is not intended for disclosure to any other person.

(b) **General Rule of Privilege.** A married person has a privilege to prevent his or her spouse from testifying as to any confidential communication from such person to the spouse.

(c) **Who May Claim the Privilege.** The privilege may be claimed by the person who made the communication or by the spouse in his or her behalf. The authority of the spouse to do so is presumed.

M.R. Evid. 504.  The privilege, however, may be waived as follows:

A person upon whom these rules confer a privilege against disclosure waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged.

M.R. Evid. 510.  We review the trial court's factual finding that the privilege had been waived for clear error.[3] *State v.*

---

3. Lipham argues that the Superior Court erred in applying the Maine law of spousal privilege, rather than Alabama law. Lipham argues that pursuant to the RESTATEMENT (SECOND) CONFLICT OF LAWS: PRIVILEGED COMMUNICATIONS § 139(2) (1971), the court should have applied Alabama law because Alabama has the most significant relationship to the recorded conversation. To the contrary, Maine has the most significant relationship to the communication because (1) the communication was initiated in Maine; (2) concerned a felony that took place in Maine; and (3) occurred between two individuals domiciled in Maine.

Furthermore, with respect to state law conflicts involving privileged communications, the RESTATEMENT provides that:

evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

*Id.* Assuming *arguendo* that there is a significant disparity in how Maine and Alabama view waiver of the spousal privilege, the RE-

*Greenleaf,* 2004 ME 149, ¶ 13, 863 A.2d 877, 880 ("We review trial court decisions on ... factual findings for clear error. Factual findings are clearly erroneous only when there is no competent evidence in the record to support them.").

[¶ 8] The Superior Court did not err when it determined that Lipham had waived the husband-wife privilege with respect to the recorded conversation with his wife. His subsequent voluntary admission to the police that he had killed Langway, albeit accidentally, was a sufficiently consistent disclosure to waive any claim of privilege Lipham may have had with respect to the recorded conversation. The disclosure that he had killed Langway disclosed a "significant part" of his privileged conversation with his wife. *See State v. Boucher,* 652 A.2d 76 (Me.1994) (holding that individual's admission to third parties that he killed a woman the same age as the victim disclosed a "key element" of his privileged communications about the murder, thereby waiving the husband-wife privilege).

B. Unfair Prejudice

[¶ 9] Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

M.R. Evid. 403. "Rule 403 requires the trial court to weigh the probative value of evidence offered by one party against the danger the evidence will unfairly prejudice the other party." *State v. Thongsavanh,* 2004 ME 126, ¶ 7, 861 A.2d 39, 41–42. "The Rule does not protect a party from

all prejudice, but only serves as a guard against *unfair* prejudice." *Id.* We review a "trial court's decision to admit evidence pursuant to Rule 403 to determine if it exceeds the bounds of the court's discretion." *Id.* ¶ 6, 861 A.2d at 41.

[¶ 10] We reject Lipham's contentions that the recording should have been excluded under Rule 403 either because his statements had little or no probative value or because his wife's statements, conveying the impression that she believed he had acted intentionally, were unfairly prejudicial. To the contrary, the trial court did not exceed the bounds of its discretion in concluding that Lipham's failure to deny his wife's accusations was sufficiently probative of his guilt to outweigh any danger of unfair prejudice, especially since the court instructed the jury that the wife's statements were not offered independently for their truth.

The entry is:

Judgment affirmed.

STATEMENT directs that we apply Maine law absent special circumstances. Despite his attempts, Lipham has failed to establish that these special circumstances exist. The Superior Court did not err in applying Maine law.