# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 12, 2011

Lyle W. Cayce
Clerk

No. 10-50717

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MYUNG ASHLEY,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, PRADO, and ELROD, Circuit Judges
JERRY E. SMITH, Circuit Judge:

Myung Ashley worked at a United States Postal Service ("USPS") process-ing and distribution plant. A videotape from a store showed two instances in which her husband, one time accompanied by her, purchased merchandise with stolen gift cards. Her husband testified that he obtained the cards by trading

No. 10-50717

merchandise to an unidentified Hispanic man. The USPS investigator who tried to question Ashley and her husband testified that both of them refused to speak to him and never provided that exculpatory story. The district court admitted the evidence of Ashley's silence as part of the prosecution's case-in-chief. The silence occurred when Ashley was not in custody and had not been read her *Miranda* rights. Ashley never took the stand at trial.

Ashley was convicted on two counts of theft of mail matter by a postal service employee for stealing gift cards. She appeals, arguing that the use of pre-arrest, pre-*Miranda* silences was impermissible. Because any error was harmless, we affirm without reaching whether pre-arrest, pre-*Miranda* silence is admissible in such a situation.

I.

Ashley was on duty during the days when the letters containing the gift cards would have passed through the plant. Security footage showed that each time, a few days after the cards were mailed, Ashley's husband, one time along with her, bought items with the cards.

USPS Special Agent Brian Carter went to the Ashleys' house to investigate. Ashley's husband spoke to Carter until Carter became accusatory, at which time Ashley's husband ended the conversation. At no time during the discussion did Ashley's husband mention anything about getting the gift cards from an Hispanic man. Carter tried again later, but Ashley and her husband declined to speak with him.

The government called Ashley's husband as a witness. He admitted that he was the person on the videos and that Ashley was the woman with him in one video. On cross-examination, he said that he had obtained the gift cards from an Hispanic man at a chicken fight in exchange for merchandise. He also said that the same man, driving a 1995 Astro van, later coincidentally found him in

No. 10-50717

a parking lot and bartered another gift card for merchandise. The prosecutor impeached Ashley's husband by noting that he never told Carter about the Hispanic man.

The court also allowed into evidence Ashley's refusal to speak to Carter. The court considered the admissibility of that refusal, which occurred before arrest and before *Miranda* warnings. The government had said it would introduce that evidence only if the defense presented an exculpatory story. Ashley objected to the evidence as violating the Fifth Amendment and being overly prejudicial under Rule 403 of the Federal Rules of Evidence. The court admitted the evidence, reasoning, after the testimony by Ashley's husband, that "if this was the case, then she had an opportunity to tell the agents at that time about the story. I'm sure that her husband must have told her about that."

For the defense, Ashley's supervisor testified that Ashley's job was to go through 400-500 pieces of mail a minute, so she did not have time to search for pieces to steal. Also, the workers can be seen through observation windows, and five cameras take pictures of them every second. The supervisor stated that Ashley had turned in checks and money that fell out of the mail and that he believed it unlikely that mail would be stolen from inside the plant. He admitted that an employee can feel the difference when there is a gift card inside an item of mail.

In closing argument, the prosecutor again referenced Ashley's failure to talk to Carter. The jury returned a verdict of guilty of theft of mail matter by a postal service employee.

## II.

There is a split among the circuit courts regarding whether and when pre-arrest, pre-*Miranda* silence can be used in the government's case-in-chief. The Fourth, Ninth, and Eleventh Circuits permit the government to use such evi-

3

No. 10-50717

dence, reasoning that the protections against self-incrimination do not apply before a suspect is arrested and has been given *Miranda* warnings.[1] Those circuits hold that because the government had not yet implicitly assured the defendant that his silence would not be used against him, it was admissible.

On the other side, the First, Sixth, Seventh, and Tenth Circuits hold the Fifth Amendment's privilege against self-incrimination prohibits the use of pre-arrest, pre-*Miranda* silence as substantive evidence.[2] Overall, those decisions stem from the premise that a defendant has a right to remain silent, subject to recognized exceptions such as impeachment in certain situations.[3] Principally, these circuits rely on *Griffin v. California*, 380 U.S. 609 (1965), which held that the Fifth Amendment forbids prosecutors from commenting at trial on the accused's refusal to testify, because it would impermissibly burden the exercise of the privilege against self-incrimination, "cut[ting] down on the privilege by making its assertion costly." *Id.* at 614. These courts apply this right even before arrest.[4] They reason that the right to remain silent is a constitutional right to say nothing about the allegations against oneself, and though *Miranda* warnings can provide additional protection, they are not necessary to the existence of the right.[5]

We need not take any position regarding the split in order to resolve the

---

[1] *United States v. Quinn*, 359 F.3d 666, 678 (4th Cir. 2004); *United States v. Oplinger*, 150 F.3d 1061, 1066-67 (9th Cir. 1998), *overruled on other grounds*, *United States v. Contreras*, 593 F.3d 1135, 1136 (9th Cir. 2010) (per curiam) (en banc); *United States v. Rivera*, 944 F.2d 1563, 1568 n.12 (11th Cir. 1991).

[2] *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000); *United States v. Burson*, 952 F.2d 1196, 1200-01 (10th Cir. 1991); *Coppola v. Powell*, 878 F.2d 1562, 1568 (1st Cir. 1989); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017-18 (7th Cir. 1987).

[3] *E.g.*, *Burson*, 952 F.2d at 1201.

[4] *E.g.*, *Combs*, 205 F.3d at 283.

[5] *E.g.*, *Savory*, 832 F.2d at 1017-18.

4

case before us.[6]  Even assuming *arguendo* that the government impermissibly used Ashley's pre-arrest, pre-*Miranda* silence, the error was harmless, because the evidence shows, beyond a reasonable doubt, that the error did not contribute to the verdict.  *See United States v. Zavala*, 541 F.3d 562, 581 (5th Cir. 2008).

No new information was provided by the admission of Ashley's silence. The evidence showed that she worked at the facility when each gift card was mailed and that her husband, once along with her, used the stolen cards shortly after they were mailed.  The only other explanation for possessing the cards was her husband's testimony that he got them from an Hispanic man.  The idea that an unidentified Hispanic man he meets at a chicken fight gave him gift cards right after they were mailed through the postal facility where his wife works is already unlikely.  It is even more suspicious that six months later, the Hispanic man just happened to find him in a parking lot with another gift card newly taken from a piece of mail that had passed through his wife's place of employment.  Moreover, this testimony was properly impeached with Ashley's husband's refusal to speak to Carter to provide that exculpatory story.

Therefore, the main effect of revealing Ashley's silence would be to attack her character for innocence generally.  To counter any such consequences, her character was bolstered after this by her supervisor.

Even though the prosecution's closing argument mentioned Ashley's refusal to speak to Carter,[7] the admission of the silence was still harmless.

---

[6] This court has taken the position that the prosecution can use a non-testifying defendant's pre-arrest silence as long as the silence "is not induced by, or a response to, the actions of a government agent."  *United States v. Salinas*, 480 F.3d 750, 758 (5th Cir. 2007) (construing *United States v. Zanabria*, 74 F.3d 590, 593 (5th Cir. 1996)).  Other circuits have interpreted *Zanabria* as our fully endorsing use of pre-arrest, pre-*Miranda* silence.  *See Combs*, 205 F.3d at 283; *Oplinger*, 150 F.3d at 1067, but the issue is unresolved until this court is faced with a case in which silence is induced by, or is a response to, government action.

[7] The prosecutor stated:

(continued...)

No. 10-50717

First, the prosecutor did not comment on Ashley's silence in the initial closing argument; Ashley brought it up in her closing, then the prosecution spoke about it in its rebuttal closing argument. Although this may not be dispositive, it does mean that Ashley's silence was not stressed to the extent that other points were emphasized in closing.

The closing remarks also attacked Ashley's husband for the same behavior. The first part of the closing referred to her "not getting any points" for not talking to Carter, but the last part talked about how her husband could have told the agent how he got the card. The final sentences are, "That's what we expect honest, straightforward people to do. And that didn't happen here, and you and I know it." That referred to both Ashley and her husband, but without her silence's being included it would still have referred to the husband and would have further destroyed the only other reasonable explanation for why they had the stolen cards.

The evidence shows that the prosecution eviscerated the only explanation provided for the Ashleys' having the gift cards besides her stealing them. Additionally, the evidence proved that the cards passed through her mail plant, on

---

[7] (...continued)

When something like this happens, it's serious, and Agent Carter has every right to ask questions about it, ask questions on your behalf to figure out what's going on at the post office. That's the job we all pay him to do, and I think we all want him to do that. So she doesn't get any points because she elected not to tell him if this was really true. "Oh, my gosh, let me tell you what happened. Let me tell you, Agent Carter. Let me tell you what happened about this. That particular card actually was my husband's. I don't know where he got it." And then Mr. Ashley could have said to Agent Carter, "Yes, absolutely. I got this from this Hispanic man from the south side" and this bizarre story. Whatever. Okay. That's what we expect honest, straightforward people to do. And that didn't happen here, and you and I know it.

The government argued that this second use of the silence should be reviewed differently for plain error, because no separate objection to it was made. The reply brief makes it plain that the purpose of mentioning the closing argument was just to show that because the silence was stressed, it was not harmless error. Therefore, whether the error was preserved separately is not relevant.

days when she worked there, and were spent shortly thereafter by her and her husband. The jury would have returned a verdict of guilty even without admission of Ashley's silence.

The judgment of conviction is AFFIRMED.