JABAR, J.,
dissenting.
[¶ 35] I respectfully dissent because, while each of the trial court’s errors may not by itself have affected Hassan’s “substantial rights,” see U.C.D.R.P.-Cumberland County 52(a); M.R.Crim. P. 52(a), when considered together, the errors deprived Hassan of a fair trial.
[¶ 36] The three errors alleged by Has-san are all connected to issues of Hassan’s reputation and credibility. First, over Hassan’s objection, the court allowed testimony by police officers regarding prejudicial details of his arrest, including particulars of a standoff with police, the police’s familiarity with Hassan, and the possible presence of a firearm in the barricaded apartment. Second, the court allowed testimony by a police officer concerning the photographic array presented to the victim, suggesting that Hassan was involved in past criminal conduct. Third, and without objection, the prosecutor committed misconduct by personally vouching for the credibility of the victim: that misconduct went unaddressed by the court.
A. The Cumulative Error Doctrine
[¶ 37] The general rule is that “the Constitution entitles a criminal defendant to a fair trial, not a perfect one.” Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). However, there are serious errors that can rise to a level requiring an appellate court to vacate a conviction and order a new trial. See id. at 681-82, 106 S.Ct. 1431. Referred to as the “cumulative error doctrine,” federal courts recognize that sometimes “[fin-dividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect” on a defendant’s right to a fair trial. United States v. Sepulveda, 15 F.3d 1161, 1195-96 (1st Cir.1993); see also United States v. Brown, 669 F.3d 10, 21 (1st Cir.2012); United States v. Caro, 597 F.3d 608, 635 (4th Cir.2010); United States v. Baker, 432 F.3d 1189, 1223-24 (11th Cir.2005); United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir.1996); United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir.1990).
[¶ 38] The United States Court of Appeals for the First Circuit explained the test for assessing the effect of cumulative errors as follows:
Of necessity, claims under the cumulative error doctrine are sui generis. A reviewing tribunal must consider each *96 such claim against the background of the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose (including the efficacy — or lack of efficacy — of any remedial efforts); and the strength of the government’s case. The run of the trial may also be important; a handful of miscues, in combination, may often pack a greater punch in a short trial than in a much longer trial.
Sepulveda, 15 F.Sd at 1196 (citation omitted). The analysis “focuses on ‘the underlying fairness of the trial.’ ” United States v. Meserve, 271 F.3d 314, 332 (1st Cir. 2001) (quoting Van Arsdall, 475 U.S. at 681, 106 S.Ct. 1431).
[¶ 39] Although we have not explicitly adopted the federal cumulative error analysis, we have recognized that individual errors, when taken together, can deprive a defendant of a fair trial. See, e.g., State v. Dolloff, 2012 ME 130, ¶ 74, 58 A.3d 1032 (reviewing multiple allegations of prosecu-torial misconduct, some of which resulted in error, “cumulatively and in context to determine whether [the defendant] received an unfair trial that deprived her of due process”); State v. Linnell, 408 A.2d 693, 694-95 (Me.1979) (vacating a judgment of conviction because of “[t]he cumulative effect” of an evidentiary error, improper interrogation of a witness by the trial court, and an inappropriate comment by the trial court on an issue of fact when instructing the jury).
B. Application of the Cumulative Error Doctrine
1. Claims of Error Analyzed Individually
a. Police Standoff
[¶ 40] We review a trial court’s ruling on evidentiary relevance for clear error, see Dolloff, 2012 ME 130, ¶24, 58 A.3d 1032, and its decision to admit evidence pursuant to M.R. Evid. 403 for abuse of discretion, see State v. Patton, 2012 ME 101, ¶ 24, 50 A.3d 544. Although the Court concludes that our review is constrained to an obvious error analysis because Hassan failed to preserve the issue by challenging the testimony surrounding the standoff, see Court’s Opinion ¶ 25,[7] whether it is reviewed for harmless error or obvious error has no effect on the final outcome of the cumulative error analysis.
[¶ 41] Relevant evidence may be excluded if a court determines that “its probative value is substantially outweighed by the danger of unfair prejudice.” M.R. *97 Evid. 403. “Unfairly prejudicial evidence is evidence that has an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.” Patton, 2012 ME 101, 1125, 50 A.3d. 544 (quotation marks omitted). The “critical factor” in determining whether evidence unfairly prejudices a defendant “is the significance of the [evidence] in proving the State’s case.” State v. Conner, 434 A.2d 509, 512 (Me.1981). We have noted that “[w]here the [evidence] has minimal significance, e.g., where it is probative only of uncontrovert-ed facts, or where its value is merely cumulative of other less prejudicial evidence, then it is the responsibility of both the prosecutor and the trial court to examine closely th[e] [evidence] that [is] arguably prejudicial.” Id.; see also State v. Bickart, 2009 ME 7, ¶ 39, 963 A.2d 183 (“Appropriate to this balancing [required by Rule 403] is consideration of ... the availability of other and less prejudicial means of proof .... ” (quotation marks omitted)).
[¶42] The prosecutor referenced the police standoff in her opening statement, telling the jury that they “may ... have heard about [the standoff],” lasting for “several hours,” “when it happened.” In questioning Officer Farris, the prosecutor asked the officer whether the standoff was “like TV” where police have “weapons trained on” the apartment, to which Farris replied, “At times we did.” Testimony of the police standoff included mention of (1) a SWAT team and a “Special Reaction Team” with a crises hostage negotiator, (2) an armored personnel carrier, (3) ballistic helmets and “very, very heavy vests to stop rifle penetration” worn by police, (4) “victims or hostages” possibly located in the apartment, and (5) concern that Has-san might have been holding a firearm while speaking with Farris. Farris testified that he was familiar with Hassan, had his cell phone number, and called Hassan by his street name, “BK,” during negotiations.
[¶ 43] This evidence strongly suggested that Hassan was a very dangerous person and that extreme measures had to be taken by police to secure his arrest. I agree with the Court’s opinion that Hassan’s refusal to exit the building surrounded by police may be relevant insofar as it is probative of his consciousness of guilt. Court’s Opinion ¶¶ 21-22; see State v. Hayes, 675 A.2d 106, 108-10 (Me.1996). However, the evidence of police action during the standoff, police familiarity with Hassan’s street name, and the officers’ concern that Hassan might have a firearm were both unnecessary and unfairly prejudicial. See M.R. Evid. 403; Patton, 2012 ME 101, ¶ 25, 50 A.3d 544; United States v. Williams, 739 F.2d 297, 299-301 (7th Cir.1984) (determining that testimony by a police detective “that he knew the defendant as ‘Fast Eddie’ ” unfairly prejudiced the defendant and required a new trial because, among other things, the evidence “was completely unrelated to any of the other proof against the defendant” and the “prosecution’s only possible purpose in eliciting the testimony was to create an impression in the minds of the jurors that the defendant was known by the police to be an unsavory character or even a criminal”).
[¶ 44] Extensive testimony concerning the circumstance of Hassan’s arrest constituted “propensity evidence” that generalizes “a defendant’s [other] bad act[s] into bad character and tak[es] that as raising the odds that he did the ... bad act now charged.” Old Chief v. United States, 519 U.S. 172, 180-81, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (quotation marks omitted).
[¶ 45] The court could have allowed the admission of evidence of his refusal to *98 submit to arrest and the seven-hour standoff while still preventing unfair prejudice. See M.R. Evid. 403; Old Chief, 519 U.S. at 184, 117 S.Ct. 644 (“[W]hat counts as the Rule 403 ‘probative value’ of an item of evidence, as distinct from its Rule 401 ‘relevance,’ may be calculated by comparing evidentiary alternatives.”); cf. United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir.2000) (holding that, pursuant to Rule 403, the “risk of an improper criminal propensity inference should be considered in light of the totality of the circumstances, including the government’s need for the evidence given other available testimony ” (emphasis added)). Moreover, the Rule 403 “balancing act” involves consideration of the availability of other, less prejudicial, means of proof. See Bickart, 2009 ME 7, ¶ 39, 963 A.2d 183; Conner, 434 A.2d at 512. Hassan’s refusal to surrender could have been established without reference to the highly prejudicial details of the standoff.
[¶ 46] Therefore, the trial court abused its discretion by allowing extensive, unfairly prejudicial testimony concerning the police standoff. See M.R. Evid. 403; Old Chief, 519 U.S. at 180-84, 117 S.Ct. 644; Varoudakis, 233 F.3d at 122; Bickart, 2009 ME 7, ¶ 39, 963 A.2d 183; State v. Lipham, 2006 ME 137, ¶ 9, 910 A.2d 388; Conner, 434 A.2d at 512. Because the cumulative effect of the errors denied Has-san a fair trial, it is unnecessary to determine, under either the harmless error or obvious error analysis, whether this error, standing alone, affected Hassan’s substantial rights. See U.C.D.R.P.-Cumberland County 52; M.R.Crim. P. 52.
b. Photographic Array
[¶ 47] Generally, a trial court’s decision to admit evidence under Maine Rule of Evidence 404(b) is reviewed for clear error, and a decision under Rule 403 is reviewed for abuse of discretion. State v. Turner, 2001 ME 44, ¶ 5, 766 A.2d 1025. Here, Hassan’s motion in limine argued, among other things, that evidence of the photographic array should be excluded because the State intended “to introduce testimony from Detective Dunham that the photo line-up shown to [the victim] exclusively contained photographs of men who the police believe are associated with criminal activity.” In its pretrial ruling on Hassan’s motion, the court explained that the State had “no intention” of eliciting testimony “about the fact that the people in the photo lineups are people who have been arrested in the past.” Instead, according to the court’s understanding, the prosecutor was “going to simply get into the photograph lineup process with the witness with no reference as to where the photographs came from or anything of that nature.” (Emphasis added.)
[¶ 48] Despite the court’s understanding that the State would only tangentially introduce evidence regarding the photographic array, Dunham testified extensively as to the manner in which police assembled photographic arrays. Explaining the past and current methods used by police, he stated that arrays are “typically” composed of “arrest photographs,” strongly suggesting that Hassan was among a group of persons involved in past criminal conduct. This testimony was irrelevant, prejudicial, and served only to establish that Hassan had a criminal character and “acted in conformity” with that character on the night the victim was assaulted. See M.R. Evid. 404(b); State v. Pierce, 474 A.2d 182, 185 (Me.1984). Exacerbating the prejudicial effect of this testimony, Farris testified that he was “familiar” with Hassan, had Hassan’s cell phone number, and identified Hassan by his street name, “BK.”
[¶ 49] Maine Rule of Evidence 404(b) prohibits admission of evidence of past *99 crimes “to prove the character of a person in order to show that the person acted in conformity therewith.” However, such evidence is admissible if it is relevant, “more probative than prejudicial,” and “offered for a purpose other than establishing character.” Pierce, 474 A.2d at 185; see also Turner, 2001 ME 44, ¶ 5, 766 A.2d 1025.
[¶ 50] The court erred in allowing Dun-ham’s testimony concerning the manner in which police assembled the photographic array used to identify Hassan. Because the cumulative effect of the errors denied Hassan a fair trial, it is unnecessary to determine under the obvious error analysis whether this error, standing alone, affected Hassan’s substantial rights. See U.C.D.R.P.-Cumberland County 52(b); M.R.Crim. P. 52(b).
c. Prosecutorial Misconduct
[¶ 51] A lawyer may not “state a personal opinion as to ... the credibility of a witness.” M.R. Prof. Conduct 3.4(e); see also State v. Williams, 2012 ME 63, ¶ 46, 52 A.3d 911. “A prosecutor improperly vouches for a witness ... [by] imparting] her personal belief in a witness’s veracity or implying] that the jury should credit the prosecution’s evidence simply because the government can be trusted.” Id. (quoting United States v. Perez-Ruiz, 353 F.3d 1, 9 (1st Cir.2003)). As the Court notes, because Hassan failed to object to the instances of prosecutorial misconduct at trial, our review is for obvious error. Court’s Opinion ¶ 32; see Dolloff, 2012 ME 130, ¶ 35, 58 A.3d 1032.
[¶ 52] The prosecutor engaged in misconduct when she interjected her personal opinion about the victim’s credibility into her closing argument. The Court cites as the only instance of prosecutorial misconduct, not objected to by the defendant at trial, the prosecutor’s statement during closing arguments, “I would suggest to you that [the victim’s] testimony was entirely credible given what she had gone through that night and that you should believe her.” However, the prosecutor also clearly interjected her own opinion when she said that the victim “was pretty forthright and honest, I think you would agree with me.” (Emphasis added); see M.R. Prof. Conduct 3.4(e); see also Dolloff, 2012 ME 130, ¶ 56, 58 A.3d 1032 (concluding that the prosecutor committed misconduct during closing argument by repeatedly using the phrase, “I think,” which “could have been understood by the jury to present the prosecutor’s personal opinion” (quotation marks omitted)). Clearly, interjecting her personal opinion by encouraging the jury to agree with her assessment of credibility was a serious instance of prosecutorial misconduct — a violation of M.R. Prof. Conduct 3.4(e) that is far more egregious than use of the phrase “I suggest.”
[¶ 53] The context in which the prosecutor’s statements took place is also important. See State v. Dolloff, 2012 ME 130, ¶ 44, 58 A.3d 1032 (requiring trial and appellate courts to consider the “overall context of the trial” when assessing allegations of prosecutorial misconduct). In this case, only the victim’s testimony identified Hassan as the individual who assaulted her with a knife and then held her captive. During Hassan’s opening statement, the cross-examination of the victim, and Has-san’s closing argument, defense counsel framed the case as resting entirely on the credibility of the victim.
[¶ 54] Thus, the prosecutor’s improper vouching for the victim, considered in the context of a trial focused on the credibility of the victim and tainted by errors that undermined Hassan’s character, constituted prosecutorial misconduct that was not adequately addressed by the court. Because the cumulative effect of the errors denied Hassan a fair trial, it is unneces *100 sary to determine under the obvious error analysis whether this error affected Has-san’s substantial rights. See U.C.D.R.P-Cumberland County 52(b); M.R.Crim. P. 52(b).
2. Errors Analyzed Cumulatively
[¶ 55] To vacate a judgment of conviction based on cumulative error, an appellate court must conclude that:
(1) Errors occurred;
(2) Those errors, analyzed individually, were either harmless or did not result in manifest injustice; and
(3) Considered together, those errors resulted in the defendant receiving an unfair trial.
See U.C.D.R.P.-Cumberland County 52; M.R.Crim. P. 52; United States v. Bayard, 642 F.3d 59, 66 (1st Cir.2011) (applying the cumulative error doctrine and noting that “without any errors, there is nothing to accumulate”); Meserve, 271 F.3d at 332 (describing the cumulative error doctrine).
[¶ 56] Although individually the errors may not have deprived Hassan of a fair trial, when viewed together their cumulative effect is far more disconcerting. First, all of the errors were interrelated, concerning issues of credibility and the character of both the victim and Hassan. See Sepulveda, 15 F.3d at 1196. During the State’s closing argument, the prosecutor personally vouched for the credibility of the victim. In a case that largely hinged on the credibility of the victim and Hassan, the prosecutor’s vouching is significant and highly prejudicial.
[¶ 57] Moreover, the court admitted substantial evidence offered by the State supporting the inference that Hassan was a dangerous person with a criminal history. The evidence surrounding the photographic array suggested that Hassan had been involved in prior criminal conduct, while the evidence surrounding the police standoff suggested that he was dangerous and unstable.
[¶ 58] This evidence significantly impacted the jury’s perception of Hassan’s character. Because of the danger associated with this type of propensity evidence, the admission of other prior bad acts or criminal history in a criminal trial is inherently prejudicial. See State v. DeMass, 2000 ME 4, ¶ 12, 743 A.2d 233 (emphasizing that evidence of other crimes or bad acts “may be admitted only if it is relevant to some ... issue [other than acting in conformity with the behavior] at trial.” (quotation marks and alterations omitted)); Field & Murray, Maine Evidence § 404.4 at 141 (6th ed.2007) (explaining that Rule 404(b) seeks to prevent jurors from adopting the “hypothesis that a person who has committed one or more other crimes is more likely than not to have committed another [crime]”).
[¶ 59] Second, the court did not take sufficient remedial steps to negate the prejudicial effect of the errors. See Sepulveda, 15 F.3d at 1196. Although the court did instruct the jury that the “closing arguments of the attorneys are not evidence,” this instruction failed to adequately address the cumulative effect of the errors, which together portrayed Hassan as a dangerous criminal. Cf. State v. Mooney, 2012 ME 69, ¶¶ 18 n. 6, 19, 43 A.3d 972.
[¶ 60] Third, this was a short, one-day trial, where errors “may often pack a greater punch ... than in a much longer trial.” See Sepulveda, 15 F.3d at 1196. Here, the erroneously allowed evidence and argument were a significant portion of the overall testimony and argument offered against Hassan.
[¶ 61] Finally, only the victim’s testimony and out-of-court identification linked Hassan to the charges of assault, criminal *101 threatening, and criminal restraint. See id. (explaining that courts applying the cumulative error doctrine should consider “the strength of the government’s case”). Further, the victim was inconsistent in her explanation as to who assaulted her. She initially told a convenience store cashier that she was assaulted by two girls who stole her cell phone, later told investigators that she was assaulted by someone named “Omar,” then, on cross-examination, denied giving investigators the name “Omar.”
[¶ 62] Given these weaknesses in the State’s case, the short duration of the trial, the interrelationship of the errors, and the overall prejudicial effect of the errors on credibility, the risk of jurors being influenced by the improper evidence and argument is directly related to the outcome of the trial. These errors, when considered together and applying the cumulative error doctrine, deprived Hassan of a fair trial. I would vacate the judgment of conviction and remand the case to the trial court for a new trial.

. The record demonstrates that Hassan did, in fact, challenge the testimony at issue, first through a pre-trial motion in limine, and second by renewing his objection at an appropriate point in the trial prior to the testimony of Officer Farris. See State v. Dolloff, 2012 ME 130, ¶ 39 n. 11, 58 A.3d 1032 (explaining that "[t]he requirement is to object at a time when the court retains the ability to provide a meaningful corrective instruction,” which may require counsel to "wait a short time in order not to ‘throw the skunk into the jury box.' ”).
"An issue is deemed to be raised or preserved if there is a sufficient basis in the record to alert the trial court ... and any opposing party to the existence of that issue,” Alexander, Maine Appellate Practice § 402(a) at 243 (4th ed.2013) (quotation marks omitted), and "a motion in limine may preserve a Rule 403 objection to the admission of evidence when the court's ruling on the motion is unequivocally final.” State v. Allen, 2006 ME 21, ¶ 9 n. 3, 892 A.2d 456 (quotation marks omitted). Here, the court’s ruling on the motion in limine and Hassan’s renewal of the objection at trial was unequivocally final. Although it is conceivable that Hassan could have renewed his objection at an earlier time during the "tangential testimony” of Officer Morin, Hassan still properly preserved the issue for appellate review.