1998 ME 191

**STATE of Maine**

v.

**Michael BRINE.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 22, 1998.

Decided July 29, 1998.

Norman R. Croteau, District Attorney, Joseph M. O'Connor, Asst. Dist. Atty., South Paris, for the State.

Stephen M. Brochu, Law Offices of William Maselli, Auburn, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

[¶ 1] Michael Brine appeals from a judgment convicting him of attempted murder (class A) and aggravated assault with a dangerous weapon (class B) in violation of 17–A M.R.S.A. §§ 152,[1] 201[2] & 208[3] (1983 & Supp.1997), entered in the Superior Court (Oxford, *Delahanty, J.*). Brine contends that the court erred in admitting certain evidence. Finding no error, we affirm the judgment.

[¶ 2] Alerted to a fight in progress on the evening of August 11, 1996, Norway police found Leroy Howard suffering from a knife wound. Howard testified that he was stabbed in the hallway of his apartment building by Brine and Michael Everett.[4] Howard was hospitalized and treated for potentially life-threatening injuries. Howard's girlfriend, Laura Mason, testified that she had had a previous two-and-a-half year relationship with Brine, that Brine is the father of her son, and that Brine and Howard's friendship "went bad" at some point. Everett testified that he knocked on the door of Howard's apartment and when Howard opened it "everybody just started beating on [Brine]." He also testified that as he and Brine drove from the crime scene, Brine indicated to Everett that he had stabbed Howard, and showed Everett a knife when they got out of the car.

[¶ 3] A witness testified to being in an apartment with a large number of people shortly after the stabbing, and seeing a man he later identified as Brine, who "pulled out a knife and then, like, showed it to everybody and explained stabbing somebody." Other witnesses testified to having seen Brine

---

1. Title 17–A M.R.S.A. § 152 provides in pertinent part:

   **152. Attempt**
   1. A person is guilty of criminal attempt if, acting with the kind of culpability required for the commission of the crime, and with the intent to complete the commission of the crime, he engages in conduct which, in fact, constitutes a substantial step toward its commission. A substantial step is any conduct which goes beyond mere preparation and is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.

2. Title 17–A M.R.S.A. § 201 provides in pertinent part:

   **201. Murder**
   1. A person is guilty of murder if:
   A. He intentionally or knowingly causes the death of another human being;
   B. He engages in conduct which manifests a depraved indifference to the value of human life and which in fact causes the death of another human being....

3. Title 17–A M.R.S.A. § 208 provides:

   **208. Aggravated assault**
   1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:
   A. Serious bodily injury to another; or
   B. Bodily injury to another with use of a dangerous weapon; or
   C. Bodily injury to another under circumstances manifesting extreme indifference to the value of human life. Such circumstances include, but are not limited to, the number, location or nature of the injuries, the manner or method inflicted, or the observable physical condition of the victim.
   2. Aggravated assault is a Class B crime.

4. Both Brine and Everett were indicted on both charges for attempted murder and aggravated assault. The charges against Everett were dismissed pursuant to M.R.Crim. P. 48(a).

showing people a knife on the evening of August 11th, although a former girlfriend of Brine's testified that Everett admitted to her that he had stabbed Howard. Police located Everett standing out in the street shortly after the stabbing, and arrested him. Everett testified that "he didn't want to run" because he "had no reason to." Brine was not located until the next day in a search of a local residence. Brine provided several different versions to police as to how Howard was stabbed.[5]

[¶ 4] The State called Evelyn Ashby of Freeport as a witness. Ashby is married to Brine's grandfather. On the night of the stabbing Ashby called the Freeport police, and, in a tape-recorded call, sought to verify whether there had been a stabbing in the South Paris area, because her "nephew" had told her that he had stabbed someone. The transcript clearly shows that Ashby believed Brine had murdered someone.[6]

[¶ 5] Ashby did not incriminate Brine when she began to testify at Brine's trial, but, rather, stated that Brine had telephoned her on the night of the stabbing to tell her that he had "been near a stabbing" and that he wanted to come down to her home in Freeport. When asked whether she recalled telling a Freeport police officer that Brine had murdered someone, she said she did not recall saying so, and stated that she had been "surprised when I read there that I am quoted as saying it because I have always known Michael, who has lived with me, to be suicidal, not homicidal." Over Brine's objec-

tion based on M.R. Evid. 403,[7] the tape and a typed transcript of Ashby's telephone call to the Freeport police were admitted in evidence as prior inconsistent statements, and the tape was played for the jury. Brine filed this appeal after the jury found him guilty of both counts.

[¶ 6] Brine contends that the tape and transcript evidence of Ashby's statements to the Freeport police amounted to an unfairly prejudicial confession and that it constituted character evidence admitted contrary to M.R. Evid. 404.[8]

I.

[¶ 7] The State sought to introduce the tape and transcript "only as it applies to impeach the testimony of Ashby as a prior inconsistent statement." Over Brine's objection, the court allowed the jury to hear the tape and to read the transcript, and it gave a limiting instruction to the jury:

> I would also instruct you, ladies and gentlemen, that this taped conversation is being offered only as it applies possibly to impeach the testimony of Evelyn Ashby as a prior inconsistent statement. It is not offered for the truth that any—of anything that is asserted in there.

[¶ 8] Brine contends that the State used the impeachment argument as a pretext to get what amounted to a confession before the jury, that otherwise would have been impermissible hearsay.

---

5. A police officer testified:

> Q. What did [Brine] say?
> A. Let's see. The first time was Leroy stabbed himself, and I think he said that Leroy stabbed himself twice, on two different occasions when I asked him that same question. Then he said that there must have been a knife stuck in the door and that Leroy must have got stuck with the knife in the door. Then he told me that there might have been a knife in the wall and that Leroy must have stabbed himself against the wall. And then he told me that a drunk did it.

6. WOMAN "I'M QUITE SURE THAT IT DID HAPPEN"
MAN "WHAT?"
WOMAN "THAT HE MURDERED SOME-ONE"
. . . .

MAN "OKAY. AND HE SAID HE STABBED SOMEBODY"
WOMAN "YEAH, AND HE BELIEVES THIS PERSON IS DEAD."
. . . .

7. M.R.Evid. 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of evidence.

8. M.R. Evid. 404 provides in pertinent part:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion. . . .

[¶ 9] We have "consistently held that a witness may be impeached by evidence that he made an earlier, out-of-court statement inconsistent with his trial testimony." *State v. Robinson*, 561 A.2d 492, 494 (Me. 1989). There are "two preconditions" before such statements may be admitted, however: "[T]he out-of-court statement must be truly inconsistent with the witness's trial testimony, and the impeachment must be based on a 'relevant' and not a 'collateral' matter." *Id.* (citing *State v. Allen*, 462 A.2d 49, 52 (Me. 1983)). Even if the prior statement satisfies all the prerequisites for admissibility as a prior inconsistent statement, a trial court must further ask whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. *State v. Dodge*, 397 A.2d 588, 592 (Me.1979); M.R.Evid. 403. The danger of unfair prejudice arises from the risk that the out-of-court statement would be used by the jury as substantive proof of the defendant's guilt. *Dodge*, 397 A.2d at 592. "The trial court has broad discretion in determining whether the risk of prejudice to the defendant outweighs the probative value of evidence." *State v. Hurd*, 360 A.2d 525, 527 (Me.1976). Prejudice, in this context, "means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis...." *State v. Forbes*, 445 A.2d 8, 12 (Me.1982) (quoting *Hurd*, 360 A.2d at 527 n. 5).

[¶ 10] Brine relies on *United States v. Ince*, 21 F.3d 576 (4th Cir.1994) to argue that the State improperly impeached its own witness [9] to get before the jury what amounts to a confession from the defendant. The court in *Ince* cautioned against allowing the prosecution to impeach its own witness "by presenting what would otherwise be inadmis-

sible hearsay if that hearsay contains an alleged confession to the crime for which the defendant is being tried." *Id.* at 581. Evidence inadmissible for substantive purposes may not be purposely introduced under the pretense of impeachment. *United States v. Peterman*, 841 F.2d 1474, 1479, n. 3 (10th Cir.1988).

[¶ 11] In *Ince*, the court found the State's use of purported impeachment evidence to be a mere pretext. In this case, however, Ashby's testimony at trial was exculpatory as to Brine. She testified that Brine called her on the night in question to tell her that he had been near a stabbing. The statement she previously made to the Freeport police, however, explicitly implicated Brine in the stabbing.[10] In his cross-examination of Ashby, Brine sought to reinforce what she had testified to on direct examination. Moreover, the State in its closing confined its comments regarding the tape and transcript to their inconsistency, rather than quoting and arguing the truth of the confession, as in *Ince*. In addition, the court gave an instruction limiting its use by the jury to impeachment. The impeachment was based on relevant, non-collateral matter, (*i.e.* what motivated Brine to telephone Ashby shortly after the stabbing). There is nothing in the record to show that the State's calling of Ashby as a witness was in bad faith or that the use of the impeachment was a mere pretext. The court acted within its discretion in admitting the impeachment evidence.

II.

[¶ 12] Brine also contends that two portions of the Ashby tape and transcript are inadmissible character evidence and were admitted contrary to M.R. Evid. 404(a):[11]

(1) her statement that she is "quite sure" that the stabbing happened and "that he murdered someone."; and

---

9. M.R. Evid. 607 provides that a witness may be impeached by the party that called her.

10. *See supra* note 6.

11. M.R.Evid. 404(a) provides in pertinent part:
   **(a) Character Evidence Generally.** Evidence of a person's character or a trait of his charac-

ter is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
   (1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same....

(2) her statement that she would not want the Freeport police to make its inquiry about the stabbing over a scanner "[b]ecause he ... God, he'd hear a scanner. And if he thinks I'd turn him in, he'd probably kill me!"

He contends that these statements are Ashby's speculation and belief about Brine's violent propensities and "left the jury with the unavoidable conclusion that the Appellant is a very violent person." He also contends the statements went beyond the testimony she gave at trial that she denied or did not recall saying that Brine had murdered someone, and that their prejudicial effect outweighed their probative value.[12]

[¶ 13] Brine raised no objection to the admission of the statements on the ground that they were impermissible character evidence. Accordingly as to the admission of those portions of the tape and transcript that Brine asserts violate Rule 404(a) we review for obvious error, and we find none. *Cf. State v. Thomes*, 1997 ME 146, ¶ 7, 697 A.2d 1262, 1264 (Me.1997) (unpreserved challenge to motion in limine ruling reviewed for obvious error affecting his substantial rights, and judgment is vacated only if "the convictions resulted from a fundamentally unfair trial").

[¶ 14] Although the impact of Ashby's recorded statements to the Freeport police is difficult to measure, there was ample other evidence supporting the jury's conclusion that Brine stabbed Howard with the intent to kill him. The admission of Ashby's phone call to the Freeport police did not result in a fundamentally unfair trial.

The entry is:

Judgment affirmed.

---

**12.** Brine also argues that it was error for the court to allow the State to enter the tape in evidence without removing the allegedly inadmissible portions. We review a court's decision to admit evidence pursuant to Rule 403 for an abuse of discretion. *State v. Thompson*, 1997 ME 109, ¶ 14, 695 A.2d 1174, 1179 (Me.1997). *See also United States v. Carbone*, 798 F.2d 21, 24 (1st Cir.1986) (admission of audiotape with poor sound quality rests within the discretion of the trial court).

The tape appears to have been short—approximately two minutes in length with a transcript of three pages of large, liberally spaced type. Brine did not object to specific portions of the tape other than to say that there were several places in the transcript with question marks. Although the tape alone might have been confusing, the transcript is readily comprehensible. The court acted within its discretion in admitting the evidence.