2007 ME 66

**STATE of Maine**

v.

**Gary P. McNALLY.**

Supreme Judicial Court of Maine.

Argued: Jan. 17, 2007.

Decided: May 24, 2007.

Neale T. Adams, District Attorney, Suzanne N. Russell, Asst. Dist. Atty. (orally), Caribou, for State.

Sarah E. LeClaire, Esq. (orally), Presque Isle, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.

Concurrence: SILVER, J.

LEVY, J.

[¶ 1] Gary P. McNally appeals from a judgment of conviction for unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E) (2006) following a jury trial in the Superior Court (Aroostook County, *Hunter, J.*). McNally contends that the court committed obvious error by using a jury verdict form that can be interpreted as shifting the burden of proof to him and depriving him of the presumption of innocence. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] McNally was charged by indictment in March 2004 with two counts of unlawful sexual contact. 17–A M.R.S. § 255–A(1)(E), (F) (2006). The counts pertained to two sisters, then ages eleven and ten, with one count as to each. A jury trial was conducted in June 2005.

[¶ 3] Following the close of the evidence, the court's verbal instructions to the jury included appropriate explanations of the State's burden to prove the charges beyond a reasonable doubt and the presumption of innocence, and emphasized that "the burden of proof is always entirely upon the State. This is not a shifting burden." The verbal instructions were followed, in turn, by the parties' closing arguments, and then by additional verbal instructions from the court, beginning with

---

* Justice Howard H. Dana Jr. sat at oral argument and participated in the initial conference but retired before this opinion was certified.

instructions regarding the jury verdict form. The court distributed copies of the jury verdict form so that each juror could read the form as the court explained it.

■ [¶ 4] The jury verdict form required the jury to place an "X" on the line indicating either "GUILTY" or "NOT GUILTY" for each count, and the language of the form, identical as to each count, stated the reasonable doubt standard as follows:

> With regard to the charge of Unlawful Sexual Contact, alleged to have been committed against [the alleged victim] in Count [1, 2] of the indictment, the jury finds unanimously and beyond a reasonable doubt that the Defendant is:
> GUILTY _____ NOT GUILTY _____

The court explained to the jurors that the purpose of the form was to guide them through their decision-making process, and, in explaining the use of the form as to count two, the court stated, "you have the same preliminary question, and that is whether you find beyond a reasonable doubt that unlawful sexual contact has occurred with regard to [the alleged victim] or not." The copies of the form were then collected and the court explained that only one verdict form would be sent into the jury room.

[¶ 5] The court further explained that the jury would receive written instructions along with the exhibits, emphasizing that the written instructions pertained to the elements of the offense of unlawful sexual contact, but that the jury was to consider the instructions "in their entirety as a whole." The written instructions did not explain the burden of proof or the presumption of innocence. The court overruled McNally's objection to the written instructions that they placed undue emphasis on some, but not all, of the court's verbal instructions. McNally did not object to the verdict form itself.

[¶ 6] After a full day of deliberations with ten questions from the jury and fourteen requested "readbacks," the jury found McNally guilty with respect to count one and not guilty with respect to count two. The jury verdict form reflected this result.

[¶ 7] Following the denial of McNally's motion for a new trial, the court sentenced McNally to thirty months imprisonment with all but six months suspended, three years of probation, and the requirement that he register as a sex offender. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

■ [¶ 8] McNally contends that the verdict form impermissibly required him to prove that he was not guilty beyond a reasonable doubt and thereby negated the presumption of innocence. Because McNally did not object to the verdict form at trial, we review the record only for obvious errors. *See* M.R.Crim. P. 52(b); *State v. Schofield*, 2005 ME 82, ¶ 28, 895 A.2d 927, 935. When an unpreserved error is of constitutional dimension, we review the record to determine if the error "worked a substantial injustice or affected the defendant's substantial rights." *State v. Barnes*, 2004 ME 105, ¶ 5, 854 A.2d 208, 209–10. Jury instructions are reviewed "as a whole, taking into consideration the total effect created by all the instructions and the potential for juror misunderstanding." *State v. Saucier*, 2001 ME 107, ¶ 23, 776 A.2d 621, 627–28 (quotation marks omitted).

### B. Verdict Form

■ [¶ 9] Criminal verdict forms are useful when there are multiple charges, but if used, a form is best limited to direct questions that simply ask the jury to re-

port whether they find the defendant guilty or not guilty as to each charge. *See State v. Fournier*, 554 A.2d 1184, 1188 n. 7 (Me.1989); *see also United States v. Edelkind*, 467 F.3d 791, 795 (1st Cir.2006) (noting the problems associated with detailed criminal jury verdict forms). We have cautioned that a verdict form will not pass constitutional scrutiny in a criminal proceeding if the form is "designed to lead the jurors down the guilty trail." *See State v. Lamson*, 640 A.2d 1076, 1082 (Me.1994) (quotation marks omitted).

[¶ 10] In the present case, the verdict form could be interpreted to suggest that the jury could find McNally not guilty only if his lack of guilt was established by proof beyond a reasonable doubt. This suggestion was reinforced by the court's verbal explanation that as to count two, the question on the verdict form "is whether you find beyond a reasonable doubt that unlawful sexual contact has occurred with regard to [the victim] or not." Considered together, the verdict form and the instruction are inconsistent with the principle that the presumption of innocence alone is sufficient for a jury to acquit a defendant. *See State v. Goodridge*, 556 A.2d 211, 211–12 (Me.1989). The suggestion that the burden of proof beyond a reasonable doubt applies not only to a finding of guilty, but also to a finding of not guilty, contravenes the bedrock constitutional precept that criminal defendants are presumed innocent and are not required to prove their innocence. Shifting to the defendant the burden to prove her or his innocence as to the elements of a charge violates the constitutional guarantee of due process. *See Mullaney v. Wilbur*, 421 U.S. 684, 704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The verdict form in this case violated these principles and was in error.

## C. Obvious Error Analysis

■■ [¶ 11] We next consider whether, from our review of the record, the error associated with the verdict form is obvious in that it worked a substantial injustice or affected McNally's substantial rights. Obvious error analysis requires us to grant relief where the error is "so highly prejudicial and so taints the proceedings as to virtually deprive the defendant of a fair trial." *State v. Kirk*, 2005 ME 60, ¶ 3, 873 A.2d 350, 351 (quotation marks omitted).

[¶ 12] The verdict form was a prominent aspect of the court's instructions to the jury. Each juror received a copy of the verdict form and had it in hand as the court emphasized its helpfulness, describing it as a "tool" to assist them in their "analytical choices." This emphasis on the importance of the form in the decision-making process, coupled with the fact that it was the first and last document the jury interacted with after the close of the evidence, makes it likely that the jury considered and relied on the language contained in the form in reaching its verdicts. *See State v. Cote*, 462 A.2d 487, 490 (Me.1983).

[¶ 13] In addition, considering the court's verbal instructions, written instructions, and the verdict form as a whole, a jury could reasonably be confused by the conflicting statements regarding the burden of proof. Although the jury heard the correct standard in the verbal instructions, the only written guidance they received on this fundamental point was that contained in the verdict form. We must infer that the jurors understood that the standard contained in the verdict form was a correct statement of the law, and that they would have resolved any uncertainty arising from the conflict between the verbal instructions and the verdict form in favor of the written language in the form. *See State v. Lebreton*, 364 A.2d 645, 648 (Me.1976).

■ [¶ 14] The law is highly solicitous of the reasonable doubt standard because it

is of paramount importance in guaranteeing the protection of due process in the administration of criminal justice. *See State v. Lockhart,* 2003 ME 108, ¶ 44 n. 4, 830 A.2d 433, 448; *see also* 17-A M.R.S. § 32 (2006). Because the verdict form used in this case created a serious potential for juror misunderstanding regarding the reasonable doubt standard and McNally's right to be presumed innocent, we treat the error as obvious and vacate his conviction.[1]

The entry is:

Judgment vacated. Case remanded for further proceedings consistent with this opinion.

SILVER, J., concurring.

[¶ 15] I concur in the Court's decision, but I am writing separately to address McNally's argument that the trial court improperly diverged from its role as an impartial arbiter when it alerted the State to a possible avenue of impeachment of McNally's credibility, and allowed the State's motion to reopen its rebuttal case to tender the evidence.

[¶ 16] The morning following the close of evidence, the trial court called counsel into chambers to discuss a discrepancy the court observed between McNally's testimony and his indigency affidavit:

> I called to the attention of both lawyers the fact that after hearing yesterday's testimony, particularly with regard to whether Mr. McNally was owed money by Mr. Brackett and having previously been informed that Mr. Sylvester was court appointed, the wheels began to turn in my brain as to how one might qualify for court-appointed counsel if in fact somebody else owed them $10,000, which is what I understand the general substance of that testimony to be.

In fact, McNally did testify that he lent Brackett money, but he also testified that he did not expect to be reimbursed because Brackett said he would never repay McNally. Brackett corroborated this by testifying at trial that he had no intention of ever repaying his debt to McNally.

[¶ 17] The State subsequently requested to reopen its rebuttal case in order to use the information on the affidavit for impeachment purposes.[2] The trial court granted the motion over McNally's objections.

[¶ 18] A trial court should not highlight discrepancies or supply trial strategy to any party. McNally's indigency status was not relevant to the ongoing trial proceedings. To avoid the appearance of impropriety, the court should have waited until the conclusion of the trial to address with counsel McNally's indigency status. The practical result of the court's action was to highlight the evidence that was then used to impeach McNally's credibility before the jury.

[¶ 19] Although the court's concern with McNally's indigency status was appropriate in a general sense, the court's alerting of the State to this possible avenue of impeachment in the final stage of the trial created a substantial implication that the court was assisting the State. In my view, this creates an issue of fundamental fair-

1. Because we vacate McNally's conviction on this basis, we do not address his assertion, raised for the first time at oral argument, that the verdict form was a structural error that must be presumed to have deprived him of a fair trial, as well as the other issues he raises on appeal.

2. The State always had access to the court file containing the documents at issue, but noted that it generally does not choose to review materials related to court-appointed counsel.

ness of a magnitude that I would vacate upon this basis alone.