2012 ME 119

**STATE of Maine**

v.

**Garrett CHENEY.**

Supreme Judicial Court of Maine.

Argued: Sept. 12, 2012.

Decided: Oct. 23, 2012.

Timothy E. Zerillo, Esq. (orally), John M. Burke, Esq., and Jeffrey S. Hamm, Esq., Zerillo Law, LLC, Portland, for appellant Garrett Cheney.

R. Christopher Almy, District Attorney, Tracy Collins Lacher (orally), Asst. Dist. Atty., and Susan J. Pope, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Garrett Cheney appeals from a judgment of conviction of manslaughter (Class A), 17–A M.R.S. § 203(1)(A) (2011); aggravated criminal operating under the influence (Class B), 29–A M.R.S. § 2411(1–A)(D)(1–A) (2011); aggravated leaving the scene of a motor vehicle accident (Class C), 29–A M.R.S. § 2252(5) (2011); and operating under the influence (Class D), 29–A M.R.S. § 2411(1–A)(A) (2011), entered in the trial court (Penobscot County, *Anderson, J.*) following a jury trial.

[¶ 2] Cheney argues on appeal that the court erred in (1) prohibiting him from impeaching a witness with an audio recording of prior inconsistent statements; (2) failing to presume prejudice after an attempted jury tampering; (3) failing to issue a curative instruction when the prosecutor improperly shifted the burden of proof to the defense in rebuttal closing; and (4) concluding that the evidence was sufficient to support the conviction of manslaughter when there was no proof of recklessness or criminal negligence and no proof of causation. We conclude that the evidence produced at trial permitted a rational jury to find Cheney guilty beyond a reasonable doubt on each of the counts in the indictment and that Cheney's other arguments do not justify vacating the convictions. We affirm the judgment.

## I. CASE HISTORY

[¶ 3] Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts proved beyond a reasonable doubt. *See State v. Townsend,* 2009 ME 106, ¶ 2, 982 A.2d 345.

[¶ 4] On January 30, 2010, between 2:30 a.m. and 3:00 a.m., the victim, a junior at the University of Maine, was walking in Orono. Around the same time, Cheney, who was visiting a family member in the area and had consumed alcohol to the point of significant intoxication, decided to drive his Chevrolet Silverado pick-up truck. As the victim walked south along Middle Street, Cheney drove north. Cheney crossed over the center of the street and struck the victim. She was projected, and her head struck the ground. She died at the scene.

[¶ 5] Cheney did not remain at the scene. Instead, he left Orono and proceeded to drive south on I–95. At about 3:30 a.m., he drove his truck off the side of the highway near Etna. A driver stopped to assist and advised Cheney to call 911 for assistance. When Cheney did so, the dispatcher instructed him to stay at the scene; however, Cheney asked the driver to take him to a gas station down the highway in Newport. At approximately 4:00 a.m., a trooper found Cheney eating breakfast at a restaurant attached to the gas station.

[¶ 6] The trooper administered a breathalyzer test that indicated Cheney then had a blood-alcohol content of 0.15

grams of alcohol per 210 liters of breath. The trooper charged Cheney with operating under the influence and left him at a hotel for his mother to pick him up. The trooper had Cheney's truck towed to a garage in Newport.

[¶7] At approximately 5:15 a.m., a newspaper deliveryman found the victim on the side of Middle Street and called 911. From the area around the victim, local police recovered the victim's cellphone, one mitten, and a scarf. The cellphone, which was lying open, was ten to twelve feet from the victim's body. The police found tire tracks in the snow but were unable to determine the type of vehicle that made them. A few hours after the crime scene had been examined, an officer returned to the scene where he found two small plastic pieces from a vehicle's grille and one small plastic piece from a vehicle's headlight assembly. Additionally, three days after the accident, a detective removed the snow bank from the scene and melted the snow at the police department. In the melted snow, the detective uncovered another small plastic piece from a vehicle's grille.

[¶8] An autopsy revealed that the bumper of a tall vehicle, like a truck, had hit the victim. During the autopsy, a detective recovered a small plastic piece from a vehicle's grille inside the bag used to transport the victim's body. Because the victim was hit above the knee, the medical examiner concluded that the vehicle projected her forward with extreme force.

[¶9] On February 5, 2010, a detective received information that other investigators were looking for a specific vehicle. Acting on that information, the detective first went to the location on I–95 where Cheney drove his truck off the road. From there, the detective went to the lot where Cheney's truck had been towed. At the lot, the detective examined the truck and noticed damage to the honeycomb grille that was similar to the plastic pieces found near the victim. Subsequently, a State forensic examiner fit pieces of the grille and the light assembly found at the scene in Orono exactly into the missing pieces of the grille and light assembly on Cheney's truck. The examiner then photographed these exact fits, and the photographs, along with the recovered plastic pieces, were introduced at trial.

[¶10] Cheney was indicted in Penobscot County for manslaughter, 17–A M.R.S. § 203(1)(A); aggravated criminal operating under the influence, 29–A M.R.S. § 2411(1–A)(D)(1–A); aggravated leaving the scene of an accident, 29–A M.R.S. § 2252(5); and operating under the influence, 29–A M.R.S. § 2411(1–A)(A). Cheney's eight-day jury trial began on July 19, 2011.

[¶11] During the trial, Detective Andrew Whitehouse testified about an interview that he conducted on January 30, 2010, of the victim's boyfriend at his apartment. At the time of the interview, the detectives considered the boyfriend a suspect. At trial, Detective Whitehouse testified that when he interviewed the boyfriend, he believed that the boyfriend exhibited genuine emotions regarding the death of the victim. Further, Detective Whitehouse testified that there were no "red flags" during the interview. To counter that testimony, Cheney offered an audio recording of Detective Whitehouse and another detective speaking after the interview for the purposes of impeaching Whitehouse's testimony. On the recording, Whitehouse stated that (1) the boyfriend could turn his emotions on and off; (2) the boyfriend was "editing everything" during the interview; and (3) the boyfriend's car smelled like blood and "smells like the scene."

[¶ 12] The court rejected Cheney's request to play the audio recording for the jury; however, the court permitted Cheney to question the detective about his statements regarding the boyfriend's candor, including his "editing" and his capacity to adjust his emotions. The court did not permit Cheney to question the detective about his statement regarding the smell of the boyfriend's car. The court reasoned that the latter statements were not a proper subject for impeachment.

[¶ 13] On July 26, 2011, during the lunch break, an unidentified individual approached three jurors outside the courthouse and made the following comments: (1) you are on a "high profile case," (2) the jurors should "fry him" or "hang him," and (3) "don't pull a Casey Anthony on us." [1] The three jurors who had been confronted discussed the incident with the other jurors and reported the contact to court officers.

[¶ 14] The court interviewed each juror and alternate juror separately on the record regarding the incident and whether he or she would be able to remain a fair and impartial juror in the trial. Counsel for the State and Cheney were present during the interviews of each juror. Each juror confirmed that he or she would be able to remain fair and impartial, despite the individual's comments.

[¶ 15] After completing its questioning of the jury, the court asked each party if that party objected to proceeding or wanted the court to consider a mistrial. Both the State and Cheney indicated a desire to continue with the trial, and neither requested a mistrial. Because the parties wished to proceed with the trial, the court did not make specific findings regarding the jury's ability to continue to serve impartially.

[¶ 16] Later, in closing arguments, the State made two comments on Cheney's version of events. The first occurred during the State's initial argument:

So that's our view of their case. You know, they have a lot of wishful thinking. They try to, we would suggest to you, divert your attention to somebody else. And—and—and, with all due respect, because they know Mr. Cheney is right there, they've got to somehow convince you, oh, it wasn't Mr. Cheney. It was somebody else. But they don't have any evidence of that.

Cheney did not object.

[¶ 17] The second comment occurred during the State's rebuttal closing:

Now, let's just think about this. They desperately—I say this in all due respect—they desperately want you to believe that somebody else hit [the victim] in that very same spot where Mr. Garrett Cheney crashed his vehicle. They desperately want you to believe that. Yet, they have no evidence of it.

[¶ 18] At this point, Cheney objected, arguing that the State had shifted the burden of proof to the defense. In response, the court stated, "I'll make sure the jurors understand who has the burden in this case when I instruct them." Cheney did not explicitly request that the court issue a curative instruction or move for a mistrial. [2] After completion of the

---

1. The "Casey Anthony" reference related to a high profile prosecution of a young woman in Florida who was charged and, in 2011, acquitted by a jury of homicide related to the disappearance of her small child. Anthony was convicted of charges of making false statements to investigators.

2. In a jury trial, a choice not to ask for a curative instruction regarding an adverse statement may be a good strategic choice to avoid drawing a jury's particular attention to the statement. *See State v. Roman*, 622 A.2d 96, 99 (Me.1993); *State v. Rogers*, 389 A.2d 36, 38 (Me.1978). *See also Maine Jury In-*

rebuttal argument and a lunch break, the court instructed the jury and included the standard instructions that a defendant is presumed innocent, that a defendant need not present any evidence, and that the burden of proof beyond a reasonable doubt is "entirely on the State."

[¶ 19] After deliberating for two and a half hours, the jury found Cheney guilty of all counts as charged.

[¶ 20] Before sentencing, on August 6, 2011, Cheney moved for a judgment of acquittal or, in the alternative, for a new trial. Cheney argued that (1) the evidence was insufficient to support a conviction of manslaughter, and (2) the jury "did not consider the evidence with appropriate care and diligence" as the jury deliberated for only a few hours after a two-week trial.[3] In addition, Cheney argued that a new trial was necessary to (1) correct the jury's failure to consider the evidence, and (2) remedy the juror prejudice that resulted from the unidentified individual's comments to the jurors. After a hearing, the court denied Cheney's motions.

[¶ 21] The court sentenced Cheney as follows: (1) fifteen years' imprisonment, with all but seven years suspended, and four years' probation for manslaughter; (2) six months' imprisonment for aggravated criminal operating under the influence; (3) five years' imprisonment for aggravated leaving the scene of an accident; and (4) the required license suspensions for the

*struction Manual,* § 4–14 at 4–27 (4th ed.2012).

3. Jurors need not spend any set minimum amount of time deliberating before announcing a verdict, and a short deliberation after a long trial does not suggest improper jury conduct. *See Cuthbertson v. Clark Equipment Co.,* 448 A.2d 315, 316–18 (Me.1982) (finding that there was no impropriety demonstrated

convictions. Cheney filed this timely appeal.

## II. LEGAL ANALYSIS

### A. Impeachment Testimony

[¶ 22] Cheney argues that the court erred in refusing to permit him to impeach the detective's earlier testimony by playing the audio recording of the detective's comments or questioning the detective about his recorded statements that the boyfriend's car smelled like blood and smelled like the scene.[4] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Patton,* 2012 ME 101, ¶ 24, 50 A.3d 544.

[¶ 23] There are two conditions to the admission of prior inconsistent statements for impeachment purposes: (1) "the out-of-court statement must truly be inconsistent with the witness's trial testimony," and (2) "the impeachment must be on a matter that is 'relevant' as opposed to 'collateral.'" *State v. Allen,* 462 A.2d 49, 52 (Me.1983); *see also* Field & Murray, *Maine Evidence* § 607.4 at 291–95 (6th ed.2007). "Relevant evidence is that which relates logically to a fact or issue at hand." *Allen,* 462 A.2d at 52. If the prior inconsistent statement satisfies the conditions for admissibility, the court "must further ask whether the danger of unfair prejudice substantially outweighs the probative value of the evidence." *State v. Brine,* 1998 ME 191, ¶ 9, 716 A.2d 208; *see* M.R. Evid. 403.

by a sixteen-minute jury deliberation following an eight-day trial).

4. Although there are scattered references in the record to some of this testimony being admitted substantively, Cheney's argument on appeal focuses on the admissibility of the statements for impeachment purposes alone.

[¶ 24] The court acted within its discretion to control the manner in which the detective's prior inconsistent statements were disclosed to the jury. Given that there was no other evidence of an alternate suspect at trial, the trial court could have concluded that playing the full audio recording of the detective's statements had little probative value and would only be a waste of time. *See* M.R. Evid. 403. Moreover, because the detective admitted to having made the statements when questioned, the jury was permitted to consider the statements and weigh them when determining the detective's credibility.

[¶ 25] The trial court also acted within its discretion when it barred Cheney from questioning the detective about the detective's recorded statements about the smell of the boyfriend's car. The statements were offered for impeachment purposes, and the trial court acted within its discretion to conclude that they were not relevant and not a proper subject for cross-examination. *Cf. Allen*, 462 A.2d at 52.

## B. Jury Tampering

[¶ 26] Cheney contends that the court erred in denying his post-trial motion for a new trial after a third party made statements to jurors. Cheney contends that the court erred in not applying the "presumption of prejudice" standard, articulated in *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), because the third party's statements constituted extraneous information that related to the substance of the case. Therefore, Cheney asserts that, pursuant to the presumption of prejudice standard, the State had the burden of showing by clear and convincing evidence that the third-party contact was not harmless error.

[¶ 27] The continuing validity of the presumption of prejudice standard articulated in *Remmer*, placing a special burden of persuasion on the prosecution, has been subject to question for some time. *See Smith v. Phillips*, 455 U.S. 209, 215–16, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (placing the burden on a defendant alleging juror bias to prove the existence of bias); *see also United States v. Tejeda*, 481 F.3d 44, 50–54 (1st Cir.2007); *United States v. Orlando*, 281 F.3d 586, 596 (6th Cir.2002). When there are allegations of attempts to influence the jury by third parties, recent jurisprudence suggests that the trial court has considerable discretion in how to address the issue, once it has made an inquiry of the jurors and received responses indicating that the affected juror or jurors can remain impartial. Thus, in *Tejeda*, the First Circuit observed:

> Our usual standard of review once the trial judge has made an appropriate inquiry, and the one that we utilize here, is an abuse of discretion standard, which recognizes that the district court "has wide discretion in deciding how to handle and how to respond to allegations of juror bias and misconduct that arise during a trial."

481 F.3d at 52 (quoting *United States v. Rodriguez–Ortiz*, 455 F.3d 18, 23 (1st Cir. 2006)).

[¶ 28] In *Orlando*, the Sixth Circuit indicated four principles that should govern trial court and appellate court review of an allegation of improper outside influence on jurors: (1) when a court receives a report of an unauthorized contact with a juror that a defendant alleges has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the "*Remmer* hearing" is not inherently suspect and juror statements

indicating continued impartiality are not inherently incredible. *Orlando*, 281 F.3d at 596.

[¶ 29] Other circuit court opinions have indicated similar flexibility in review of trial court responses to reported third-party attempts to influence or threaten the jury, dependent upon the extent of the court's inquiry of the jury and the perceived seriousness of the third-party influence or threat. *See United States v. Martin*, 692 F.3d 760 (7th Cir.2012) (stating that the court has flexibility in determining the type and burdens of proof in an inquiry into improper juror contacts when the nature and effect of contact, there by a third person being allowed to enter the jury room, is ambiguous); *Teniente v. Wyoming Atty. Gen.*, 412 Fed.Appx. 96, 102–06 (10th Cir.2011) (finding that the state court did not err in not presuming prejudice and in placing on the defendant the burden to demonstrate that outside contact with a juror rendered that juror unable to serve); *United States v. Lloyd*, 269 F.3d 228, 238 (3d Cir.2001) (stating that the presumption only applies "when the extraneous information is of a considerably serious nature," such as "when a juror is directly contacted by third-parties"); *United States v. Sylvester*, 143 F.3d 923, 934 (5th Cir.1998) (finding that the proper inquiry is whether the likelihood of prejudice is high enough to assign to the government the burden of proving harmlessness).

[¶ 30] In this case, after learning of the third-party comments made to the jurors, the court questioned each juror individually in the presence of the parties. The record reflects that each juror indicated that he or she would not be influenced by the third-party contact and could remain impartial. At the conclusion of its questioning of the jurors, the court asked the parties if they wished to proceed. Both parties indicated that they wanted to proceed with the trial, and neither party asked the court to consider granting a mistrial.

[¶ 31] Although we have not directly applied the more flexible review standard, in the past we have indicated that to raise a presumption of prejudice to impose a burden of proof on the State, the extraneous information must relate to the law or facts of the case. *State v. Kaler*, 1997 ME 62, ¶ 12, 691 A.2d 1226; *see also, e.g., State v. Coburn*, 1999 ME 28, ¶¶ 5, 16, 724 A.2d 1239 (finding that the knowledge of a juror who drove to an intersection at issue and shared her thoughts with the other jurors was sufficiently related to the case); *State v. Allard*, 557 A.2d 960, 961–62 (Me.1989) (finding that a police officer who informed a juror, who was a relative, that he was a witness in the case did not relate to the substance of the case).

■ [¶ 32] Even if the third-party statements trigger the presumption of prejudice standard, Cheney waived any objection when he elected to continue with the trial after the court questioned each juror in Cheney's presence and asked him if he wished to proceed. Given these circumstances, the court's decision to continue with the trial after questioning the jurors, receiving responses from the jurors indicating that they could remain impartial, and giving the parties the opportunity to state any objections was not an abuse of discretion, and the court's implicit conclusion that the jury had not been prejudiced was not clear error.[5]

---

**5.** Because neither party objected to continuing with the trial, it is understandable that the court saw no need to articulate its implicit finding that the jurors were impartial and able to continue their service without prejudice to Cheney. Absent the immediate waiver of any concern by the parties following the court's inquiry of the jurors, trial courts in

## C. Prosecutorial Misconduct

[¶ 33] Cheney argues that the State committed prosecutorial misconduct when it shifted the burden of proof to the defense by statements during closing arguments that "they had no evidence" to support an alternative suspect theory. In addition, Cheney argues that the court erred in failing to state a curative instruction following Cheney's objection to the burden shifting. Although the State made two questionable statements, one at the conclusion of its closing argument and a second at the end of its rebuttal argument, Cheney only objected to the second, which is the focus of our review.

[¶ 34] We review instances of alleged prosecutorial misconduct to first determine whether the misconduct occurred. *State v. Gould*, 2012 ME 60, ¶ 17, 43 A.3d 952. Shifting the burden of proof to the defendant or suggesting that the defendant must present evidence in a criminal trial is improper closing argument. *See State v. McNally*, 2007 ME 66, ¶ 10, 922 A.2d 479. If improper closing argument occurred, we review the State's comments as a whole, examining the incidents of misconduct both alone and taken together. *Gould*, 2012 ME 60, ¶ 17, 43 A.3d 952. If the defendant objected at trial, we review the comments for harmless error and affirm the conviction "if it is highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments." *State v. Clark*, 2008 ME 136, ¶ 7, 954 A.2d 1066.

[¶ 35] The State's comment that Cheney "[had] no evidence" that someone else struck the victim was improper. Over the course of a long trial, it

is understandable that prosecutors may, at times, slip into a more familiar vernacular. Nevertheless, it is essential that the State avoid making any statement suggesting that a criminal defendant has any burden to disprove the charges against him or her. *See McNally*, 2007 ME 66, ¶ 10, 922 A.2d 479. The State is free, however, to forcefully argue to the jury that the evidence does not support or is not consistent with the defendant's theory of the case.

[¶ 36] Because the State's comment was improper argument and because Cheney objected, we review for harmless error the trial court's decision not to immediately issue a curative instruction. On the circumstances of this case in which (1) the improper argument was mild and isolated; (2) the trial court instructed the jury on the proper burdens during its general instructions shortly after the prosecutor's improper statement; and (3) the significant evidence against the defendant does not suggest that the statement tipped a close case in favor of the State, we conclude that there was no error by the trial court.

## D. Sufficiency of the Evidence

[¶ 37] Cheney contends that the evidence produced at trial was insufficient to support his conviction for manslaughter in that the jury lacked sufficient basis to find that he caused the death of the victim or that he had the required mens rea at the time of the criminal conduct. We review the evidence in a light most favorable to the State to determine whether a jury rationally could find every element of manslaughter proved beyond a reasonable doubt. *See Townsend*, 2009 ME 106, ¶ 2, 982 A.2d 345. A criminal

---

these circumstances should make specific findings on the record regarding the impact of the alleged tampering on the jury to limit attempts to reopen the issue later in the trial or on appeal. *See State v. Coburn*, 1999 ME 28, ¶ 8, 724 A.2d 1239; *State v. Royal*, 590 A.2d 523, 525 (Me.1990).

conviction may be based solely upon circumstantial evidence and reasonable inferences drawn from it. *State v. LaVallee–Davidson*, 2011 ME 96, ¶¶ 19–20, 26 A.3d 828; *State v. Medeiros*, 2010 ME 47, ¶ 17, 997 A.2d 95.

[¶ 38] To be guilty of vehicular manslaughter, a person must be proved, beyond a reasonable doubt, to have recklessly or with criminal negligence caused the death of another human being. 17–A M.R.S. § 203(1)(A). A person acts "recklessly" when "the person consciously disregards a risk that the person's conduct will cause such a result." 17–A M.R.S. § 35(3)(A) (2011). A person acts with "criminal negligence" when "the person fails to be aware of a risk that the person's conduct will cause such a result." *Id.* § 35(4)(A). Both culpable mental states encompass "a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." *Id.* § 35(3)(C), (4)(C); *see also State v. Longley*, 483 A.2d 725, 732 (Me. 1984).

[¶ 39] Whether a person was operating under the influence "is relevant evidence which the factfinder may consider in determining whether the operator of a motor vehicle is guilty of criminal negligence." *Longley*, 483 A.2d at 731–32; *see State v. Herbest*, 551 A.2d 442, 446–47 (Me.1988). Nevertheless, "a death caused by one operating a motor vehicle while under the influence is not *ipso facto* the result of recklessness or criminal negligence as these culpable states of mind are defined in the criminal code." *Longley*, 483 A.2d at 732.

[¶ 40] Here, the record evidence indicated that Cheney decided to drive a motor vehicle while heavily intoxicated. The jury could infer from the accident reconstruction testimony that Cheney crossed the centerline of the road to strike the victim. These facts permitted the jury to find beyond a reasonable doubt that Cheney's operation of his truck constituted a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

[¶ 41] Cheney also argues that the State failed to prove beyond a reasonable doubt that his conduct caused the victim's death. Specifically, Cheney asserts that: (1) the tire tracks in the snow bank were insufficient to identify Cheney's truck; (2) the small pieces of grille found at the scene are common pieces of grille found on Chevrolet pick up trucks; and (3) fibers from the victim's mitten were not found where the victim's hand allegedly went through the grille.

[¶ 42] Circumstantial evidence alone is sufficient to support a conviction as long as the evidence as a whole supports each element of the crime. *State v. Moores*, 2009 ME 102, ¶ 10, 982 A.2d 318. At trial, the State presented evidence that pieces of grille found near the victim matched the honeycomb grille and the light assembly on Cheney's truck. Cheney's arguments are directed to the weight, not the sufficiency, of the evidence. This evidence, along with the State's other evidence concerning Cheney's whereabouts and intoxication, as well as the size of his truck, are sufficient to permit a rational fact-finder to find, beyond a reasonable doubt, that, operating his vehicle with criminal negligence, Cheney caused the death of the victim.

The entry is:

Judgment affirmed.