MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2013 ME 86
Docket:          Aro-12-586
Submitted
 On Briefs:      September 26, 2013
Decided:         October 24, 2013

Panel:           SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## JAMES A. PHILBROOK

MEAD, J.

[¶1]  James A. Philbrook appeals from a judgment of conviction entered by the trial court (*Hunter, J.*) on a jury verdict convicting him of theft by misapplication of property (Class B), 17-A M.R.S. § 358(1)(B)(1) (2012), and securities fraud (Class C), 32 M.R.S. §§ 16501, 16508 (2012).  Philbrook contends that the court's jury instructions shifted the burden of proof onto him to prove his innocence.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Viewed in the light most favorable to the jury's verdict, the record supports the following facts.  *See State v. Patton*, 2012 ME 101, ¶ 2, 50 A.3d 544. James Philbrook, a licensed stockbroker for more than thirty years prior to December 2006, was introduced to Arlene and Roland Albert, residents of St. Agatha, by the Alberts' long-time accountant when they decided to seek help

2

with estate planning. Arlene Albert is a retired registered nurse, and Roland Albert is a retired potato farmer. Philbrook began an ongoing professional relationship with the Alberts in 1995, providing them with estate planning services and selling them insurance annuities. He met with the Alberts once a year at their home to review their portfolio and discuss any changes.

[¶3] In June 2005, Philbrook called the Alberts and said that he had an interesting investment opportunity that he wanted to discuss with them. They agreed to a meeting, and about a week later Philbrook described the investment as they sat around the Alberts' kitchen table. Arlene testified that "he said it was an investment involving a Pay-Per-View [PPV] program with Carmen Electra that was going to be taking place in Florida and . . . they needed the funds to promote this [PPV] program that was going to take place and he was looking for investors." Philbrook told them that "whatever we invested in this deal, that we would double our moneys . . . [and] we would have a substantial return."

[¶4] The Alberts agreed to participate after Philbrook assured them that the venture was a safe investment, and in two transactions, one in June and the other in July, they wired him a total of $145,000. The Alberts made the second investment after Philbrook presented them with a limited-time "triple bonus" offer, which he had drafted, purporting to qualify them for a higher level of return if they invested more money soon.

[¶5]  Philbrook did not invest any of the Alberts' money in the PPV venture, but instead used it to repay money that his son had embezzled from his employer, and for Philbrook's own purposes.  Philbrook argued at trial that the money the Alberts gave him was a personal loan that he intended to repay with proceeds from his personal investment in the PPV venture, an assertion that the jury clearly rejected.

[¶6]  For the next year, the Alberts thought their investment was doing well. In July 2006, Philbrook returned with a new investment opportunity that Arlene said he described as "something to help college students with student loans and something for them for their education."  Philbrook gave the Alberts a document that he had generated showing that in thirty-four months they would receive a $125,000 payout on an investment of $50,000.  He also had the Alberts sign a confidentiality agreement providing that they would be subject to a $2,000,000 penalty if they discussed the education venture with anyone other than their son. The Alberts then gave Philbrook $50,000.  In a case brought against him by the New Hampshire Bureau of Securities Regulation, Philbrook said that he used the money "to meet [his] ongoing expenses."

[¶7]  In December 2008, Philbrook sent the Alberts a letter saying that national economic conditions prevented him from repaying them immediately, and that those conditions were unlikely to change for several months.  Eventually the

4

Alberts went to the authorities. Philbrook never repaid any of the $195,000 that they had invested with him.

[¶8]   In January 2011, Philbrook was indicted on one count of theft by misapplication of property and one count of securities fraud. The case went to trial and the jury returned a verdict of guilty on both counts. At a sentencing hearing, the court entered judgment and sentenced Philbrook on the theft by misapplication of property conviction to eight years' imprisonment, with all but three years suspended, and three years of probation with a special condition that he pay $195,000 in restitution. On the securities fraud conviction the court sentenced Philbrook to three years concurrent. Philbrook filed this appeal and an application to allow an appeal of sentence, which we denied.

## II.  DISCUSSION

[¶9]   We address only Philbrook's argument that the jury instructions misstated the burden of proof. After considering his other contentions that (1) the court's instruction on the charge of theft by misapplication of property omitted a required element, and (2) the evidence was insufficient to support the judgment, we find no error and do not discuss those issues further.

[¶10]   The court used a written verdict form that, for each of the two charges, asked the jury to complete the statement, "With regard to the charge . . .

the jury finds that the Defendant is:" by checking one of two options, "Guilty" or "Not Guilty."

[¶11]  In its verbal instructions, the court said, concerning the charge of theft by misapplication:

> [W]e want you to make the basic determination as to whether the central elements of the offense have been established beyond a reasonable doubt or not.  If you find that the offense has been committed, you have a verdict of guilty.  If you find that the offense has not been committed, you will return a verdict of not guilty.

Concerning the charge of securities fraud, the court instructed the jury to "answer the same basic question.  Has the State proved the required legal elements beyond a reasonable doubt or not?"

[¶12]  Philbrook contends that the instruction "[i]f you find that the offense has not been committed, you will return a verdict of not guilty" improperly shifted the burden of proof by requiring the jury to find that he was not guilty beyond a reasonable doubt before acquitting him.  If he is correct that such burden-shifting occurred, the error deprived him of due process.  *State v. McNally*, 2007 ME 66, ¶ 10, 922 A.2d 479.  Although Philbrook did not object to the instructions, meaning that we review them for obvious error, M.R. Crim. P. 52(b); *State v. Burns*, 2011 ME 92, ¶ 6, 26 A.3d 817, "[a] jury instruction placing any burden on a defendant to prove his innocence would be clearly erroneous."  *State v. Perry*, 486 A.2d 154, 156 (Me. 1985).  We review jury instructions "as a whole to ensure

6

that they informed the jury correctly and fairly in all necessary respects of the governing law." *Patton*, 2012 ME 101, ¶ 34, 50 A.3d 544 (quotation marks omitted).

[¶13]  Philbrook relies on our decision in *McNally*, where we held that an instruction that asked the jury to determine "whether you find beyond a reasonable doubt that [the crime charged] has occurred . . . or not" deprived the defendant of the presumption of innocence when "[c]onsidered together" with a verdict form that could be read to ask the jury which option, guilty or not guilty, had been proved beyond a reasonable doubt.  2007 ME 66, ¶¶ 4, 10, 922 A.2d 479.  We explained that "if used, a [verdict] form is best limited to direct questions that simply ask the jury to report whether they find the defendant guilty or not guilty as to each charge." *Id.* ¶ 9; *see* Alexander, *Maine Jury Instruction Manual* § 5-4A at 5-9 (2013 ed.).

[¶14]  Philbrook's reliance on *McNally* is misplaced.  Unlike the verdict form found to have violated the defendant's due process rights in that case, the verdict form used by the trial court here did not recite the burden of proof; instead, it complied with our guidance in *McNally* by simply asking the jury to report its verdict.  Absent a verdict form that might buttress imprecision in the court's verbal instructions, there is no obvious error in the instructions the court gave, because as a whole they correctly stated the law—the jury was to determine whether the

elements of the crime were proved beyond a reasonable doubt, and if so, return a verdict of guilty, and if not, return a verdict of not guilty. Furthermore, the court correctly stated the State's burden of proof and Philbrook's presumption of innocence several times during jury selection, at the beginning of the trial, in its final instructions, and in its written instructions sent into the jury room in response to a note.

[¶15] We note, however, that asking the jury to decide whether an offense "has been committed," although it did not shift the burden of proof to Philbrook in this case, is not a precise description of the jury's role. A jury in a criminal case has one central task: to determine whether, applying the law as given to it by the court, the State has proved each element of the charge beyond a reasonable doubt. Explaining the jury's charge in any other terms, for example asking the jury whether it finds that the offense has been proved beyond a reasonable doubt "or not," or whether the jury "find[s] that the offense has been committed," risks introducing confusion that may violate the defendant's due process rights in the way found fatal to the judgment in *McNally*.

[¶16] Because no due process violation occurred in this case, we affirm the judgment. Nevertheless, the best practice is for the trial court to inform the jury in its instructions that it may return a verdict of guilty only if it finds that the State has proved each element of the offense beyond a reasonable doubt, and that if the State

has failed to prove any of the elements of the offense beyond a reasonable doubt, it must return a verdict of not guilty. *See* Alexander, *Maine Jury Instruction Manual* § 6-7 at 6-12 & comment (2013 ed.).

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Sarah LeClaire, Esq., Presque Isle, for appellant James Philbrook

Janet T. Mills, Attorney General, and Leanne Robbin, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee State of Maine