MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 42
Docket:       Ken-15-137
Argued:       February 10, 2016
Decided:      March 22, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.

STATE OF MAINE

v.

BETHMARIE RETAMOZZO

HUMPHREY, J.

[¶1]  Bethmarie Retamozzo appeals from a judgment of conviction for two counts of criminal restraint by a parent (Class C), 17-A M.R.S. § 303(1)(A) (2015), entered in the Superior Court (Kennebec County, *Horton, J.*) following a one-day jury trial.  She argues that the court erred by failing to declare a mistrial on its own initiative after Retamozzo's mother testified that she had visited Retamozzo in jail.  Discerning no error or prejudice to Retamozzo, we affirm the conviction.

I.  BACKGROUND

[¶2]  Viewed in the light most favorable to the State, the record establishes the following facts.  *See State v. Cote*, 2015 ME 78, ¶ 2, 118 A.3d 805.  At the time of the incident leading to Retamozzo's arrest, her mother had full guardianship of

two of Retamozzo's children, both under the age of sixteen, and Retamozzo had rights of supervised contact.

[¶3]   On August 15, 2013, Retamozzo called her mother and asked for permission to take the children to the Skowhegan Fair.  The mother agreed. Retamozzo also contacted the court-designated visit supervisor and asked if she would be willing to supervise a visit at a local park—not at the Skowhegan Fair— that same day.  Retamozzo and the supervisor met at a local business, then drove together to Retamozzo's mother's house in the supervisor's vehicle to pick up the children.  When they arrived, Retamozzo's mother told Retamozzo to return the children later that afternoon.  Retamozzo's mother also noted that the supervisor did not have enough child car seats in her vehicle, so Retamozzo, the supervisor, and the children returned to the local business to get Retamozzo's vehicle, which was equipped with additional car seats.  Retamozzo and the children transferred to Retamozzo's vehicle.  The supervisor drove separately to the local park and waited for Retamozzo and the children, but they never showed up.

[¶4]   Retamozzo's mother called the police later that evening and a nationwide alert was issued.  Two days later, Retamozzo and the children were located at a highway rest stop in South Carolina.  Retamozzo was subsequently charged with two counts of criminal restraint by a parent.

[¶5]  At the jury trial, during direct examination of Retamozzo's mother, the following exchange occurred:

> State: When was the next time that you saw the children [after Retamozzo picked them up at Retamozzo's mother's house]?
>
> Mother: After I notified the police, they were working on finding them, and when they located them I drove down to the Carolinas to get them.
>
> State: Okay.  And when you got there did you pick [the children] up?
>
> Mother: Yes.
>
> State: And did you see Bethmarie Retamozzo when you were in South Carolina?
>
> Mother: *I visited her in jail.*

(Emphasis added.)  Retamozzo's attorney did not object to this testimony, and the questioning moved on to other topics.  After deliberation, the jury returned a verdict of guilty on both counts.[1]

## II.  DISCUSSION

[¶6]  Retamozzo's sole argument on appeal is that the court erred by failing to declare a mistrial sua sponte after her mother testified about visiting Retamozzo in jail.  Retamozzo contends that the testimony "threatened to undermine the fairness of the fact finding process" by creating an impression in the minds of the jurors of her guilt.  As Retamozzo concedes, the issue was not preserved; therefore we review for obvious error.  *See State v. Chasse*, 2000 ME 90, ¶ 12, 750 A.2d 586 (reviewing a trial court's failure to declare a mistrial sua sponte for obvious error);

---

[1]  Retamozzo was sentenced to two and a half years of imprisonment, with all but five months suspended, followed by two years of probation.

4

*State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147 (stating that obvious error is error that is plain, that affects substantial rights, and that seriously affects the fairness and integrity of judicial proceedings); M.R. Crim. P. 52(b).

[¶7]  We find Retamozzo's argument unpersuasive for several reasons. First, her reliance on *Estelle v. Williams* is misplaced.  425 U.S. 501 (1976).  In *Estelle*, the U.S. Supreme Court declared that compelling a defendant to stand trial in "identifiable prison clothes" violates the right to a fair trial.  425 U.S. at 512. However, the Supreme Court also held that a defendant must raise an objection to standing trial in prison attire with the trial court.  *Id.* at 512-13; *see also Chasse*, 2000 ME 90, ¶ 12, 750 A.2d 586 ("We cannot say that the court committed obvious error by not declaring a mistrial on its own initiative because of Chasse being clad in prison clothes given that he did not object or seek a mistrial.").

[¶8]  Second, Retamozzo's mother's brief statement at trial ("I visited her in jail") likely did not have any effect, let alone a prejudicial effect, on Retamozzo's right to a fair trial.  The case law is clear that when jurors may have learned of the defendant's incarceration status, the duration and significance of the information matters.  In *Estelle*, the Supreme Court stated, "*the constant reminder of the accused's condition* implicit in such distinctive, identifiable attire may affect a juror's judgment."  *Estelle*, 425 U.S. at 504-05 (emphasis added).  By contrast, we have held that a "*brief and inadvertent exposure* to jurors of a defendant in

handcuffs, without more, is not so inherently prejudicial as to require a mistrial." *State v. White*, 456 A.2d 13, 15 (Me. 1983) (emphasis added). In addition, the First Circuit has held that a witness's statement that she saw the defendant in jail every day did not prejudice the defendant because "[t]he possible effect on the jury of [the] fleeting comment regarding [the defendant's] pre-trial incarceration status is markedly different from that of a defendant wearing prison clothing throughout his entire trial." *United States v. Trinidad-Acosta*, 773 F.3d 298, 307 (1st Cir. 2014). Here, Retamozzo's mother's statement was more akin to a "fleeting comment" than it was to seeing a defendant in prison clothes throughout a trial.

[¶9] Finally, it is clear from the record that the State did not improperly attempt to elicit the statement at issue from Retamozzo's mother and quickly moved on to other matters once the statement was made.[2] Because there was no prejudice to Retamozzo from her mother's brief statement, we affirm the conviction.

---

[2] In addition, although Retamozzo did not raise this issue on appeal, her trial counsel did not necessarily err by not objecting to Retamozzo's mother's testimony at trial. Given the fleeting nature of the mother's comment regarding Retamozzo's incarceration status, and the fact that there was no prosecutorial misconduct, it could well have been a reasonable tactical choice by counsel to not emphasize the comment by objecting in front of the jury. *See State v. Cheney*, 2012 ME 119, ¶ 18 n.2, 55 A.3d 473.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jamesa Drake, Esq., Drake Law, LLC, Auburn, for appellant Bethmarie Retamozzo

Maeghan Maloney, District Attorney, and Frayla Schoenfeld, Asst. Dist. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

**At oral argument:**

Jamesa Drake, Esq., for appellant Bethmarie Retamozzo

Frayla Schoenfeld, Asst. Dist. Atty., for appellee State of Maine